MARY E. RODERICK

v.

CATHERINE MCMEEKIN *et al.*

| 204 | 625 |
| 215 | ²356 |

*Opinion filed October 26, 1903.*

1. POSSESSION—*possession, to operate as notice, must be exclusive.* Possession which is held by a person jointly with the owner of the record title, who is apparently in control of the premises, is not such possession as operates as notice of the rights of such person.

2. ESTOPPEL—*when a mortgagor is estopped to deny title.* A mortgagor who in terms "mortgages and warrants" the property to the mortgagee, is estopped, as against the mortgagee, to deny that he held the title when he executed the mortgage.

3. PRINCIPAL AND AGENT—*when notice to an agent is not imputed to principal.* Notice acquired by an agent before entering upon his agency is not imputed to the principal unless it was so precise and definite that it must have been present in his mind and memory during his agency.

4. PRACTICE—*when a defendant cannot object that bill was dismissed without his consent.* Failure of a defendant who has filed a cross-bill to make any objection to the master's recommendation that the original bill be dismissed or to the decree dismissing the bill must be regarded as a consent to its dismissal, within the meaning of section 36 of the Chancery act, and it is too late to raise the objection on appeal or error.

WRIT OF ERROR to the Circuit Court of Boone county; the Hon. CHARLES E. FULLER, Judge, presiding.

These consolidated causes are two bills, each to foreclose a mortgage.

On December 18, 1900, the defendant in error, Catherine McMeekin, filed her bill in the circuit court of Boone county against Howard H. Hicks, Mary E. Roderick, the plaintiff in error, Isaac Sandall, Elias Cleveland, S. N. Burdick, Frank Reed and Frank Campbell, to foreclose a mortgage, dated September 4, 1893, and recorded on September 5, 1893, executed by Howard H. Hicks, a widower, of Belvidere, Illinois, conveying lot 4 in H. H. Hicks' first subdivision of a part of the south-west quarter in

204—40

the north-west quarter of section 25, township 44, north, range 3, east of third principal meridian, for the purpose of securing a note, dated September 4, 1893, for $900.00, executed by said Hicks, payable to the order of Catherine McMeekin three years after date, with interest at the rate of seven per cent per annum, payable semi-annually. The bill alleged that the principal sum was due and interest thereon from September 4, 1900. It also alleged that Mary E. Roderick was in possession of the premises, and that Isaac Sandall had a mortgage thereon made by Hicks, and that the other defendants were judgment creditors of Hicks. Default was entered against the judgment creditors, who made no defense.

Mary E. Roderick on January 31, 1901, filed her answer to the bill denying the allegations thereof, and setting up that she, Mary E. Roderick, was in possession of the premises; that on or about February 20, 1893, by a contract between her and Hicks who then owned the premises, she purchased the same from Hicks and paid for the same; that, by the terms of her contract, she was to have immediate possession, and Hicks was to execute to her a deed of the same; that on February 20, 1893, she went into possession and has been ever since in the continuous, open and adverse possession of said premises; that, after taking possession, she began to erect a dwelling house thereon and, since its completion in August, 1893, has lived therein as her home; that, since that time, the premises have been assessed in her name and she has paid the taxes; that she has kept the building insured in her name and has paid the insurance; that thereafter Hicks had no interest in the premises, but the same were owned exclusively by her and were under her charge and control; that she is a woman, not familiar with the ways of doing business, and relied upon Hicks to give her the deed, which he promised to do, and which she supposed he had done, so as to give her a good title of record; that the first knowledge she had, that the deed from him

to her had not been recorded, was after the present suit was begun and she had been served with summons in the same; that she did not know that Hicks had made the mortgage to McMeekin until she was served with summons; that her rights are superior to those of McMeekin under the mortgage. On the same day Hicks filed an answer denying that he made the note and mortgage mentioned in the bill, and setting up substantially the same facts in regard to the contract with Mary E. Roderick and her possession, as are set up in her answer.

On the same day Mary E. Roderick filed a cross-bill, in which she set up that she had bought the premises from Hicks in consideration of certain real estate owned by her which she was to convey to him, and in further consideration of about $600.00 to be paid to him; that she made a deed of her real estate to Hicks and paid him the $600.00; that thereupon he delivered the possession to her, and she has continuously occupied the premises since; that he was to have made her a deed and filed the same for record, but failed to do so; that she was unaware of that until the present bill was filed. The cross-bill also sets up, that the cross-complainant erected a house upon the premises and took up her residence therein; that, at the time the mortgage from Hicks to McMeekin was made, cross-complainant was in the open and exclusive possession of the premises as owner, and Hicks had no interest therein and no right to mortgage the same; that she thereafter paid the taxes and insurance. The cross-bill alleges that the mortgage from Hicks to McMeekin is a cloud upon the title of the cross-complainant, Mary E. Roderick, and that the judgments of said judgment creditors, if any exist, are subject to the rights of the cross-complainant, and are also clouds upon her title. The cross-bill prays that the mortgage to McMeekin, and the interests of the other defendants, may be declared to be clouds upon her title, and may be removed.

On February 9, 1901, Catherine McMeekin, the cross-defendant, filed her answer denying the execution of the alleged contract between Howard H. Hicks and Mary E. Roderick, and the terms thereof as set up in the cross-bill, and denying that Hicks was to make cross-complainant a deed. The answer also denies, that the cross-complainant at any time began the erection of a house upon the premises, but avers that the house was erected by Hicks, and that the money, for which said mortgage for $900.00 was given, was money which cross-defendant, McMeekin, loaned to Hicks for the purpose of erecting said house. The answer also denies that cross-complainant was in the open and exclusive possession of said premises as owner, and alleges that the mortgage lien of Catherine McMeekin should be held superior to any lien or demand of the cross-complainant.

On December 10, 1900, Isaac Sandall of Belvidere filed a bill in said court praying for a foreclosure of a mortgage, dated April 1, 1894, acknowledged on April 25, 1894, and recorded April 26, 1894, executed by said Howard H. Hicks for the purpose of securing two notes, one for the sum of $200.00, due one year after date, and the other for the sum of $300.00, due two years after date, with interest at seven per cent per annum, payable semi-annually to the order of Fred J. Evans. The bill alleges that, on April 20, 1894, said notes and mortgage were duly assigned by said Evans to the complainant, Isaac Sandall, and alleges that the principal sum of the notes, with interest from April 1, 1895, less certain small payments, is due. The bill also claims $50.00 as a reasonable solicitor's fee to be included in the foreclosure decree, and as being allowed by the terms of the mortgage. This bill also alleges the possession of Mary E. Roderick, and the interest of the parties above named as judgment creditors.

The bill of Isaac Sandall was answered by Mary E. Roderick on January 31, 1901, who denied all the alle-

gations of the bill, and set up her alleged contract with Hicks and her possession as above set forth. Hicks also filed an answer to the bill of Sandall, making substantially the same denials and allegations as are made in the answer of Mary E. Roderick. Mary E. Roderick, in this suit by Sandall, filed a cross-bill setting up substantially the same allegations as were set up in her cross-bill in the other suit, and praying that the mortgage of Sandall and the claims of the judgment creditors be removed as clouds upon her title. Sandall answered the cross-bill denying the material allegations thereof.

Replications were filed to the answers in the original suits, and also in the cross-suits.

On January 31, 1901, the foregoing causes, the one a bill of foreclosure filed by Catherine McMeekin, and the other a bill of foreclosure filed by Isaac Sandall, were consolidated and ordered to proceed under the title of Catherine McMeekin and Isaac Sandall *vs.* Howard Hicks, Mary E. Roderick, *et al.*

On February 18, 1901, the consolidated causes were referred to a master in chancery to take and report proofs, together with his findings thereon. Evidence oral and documentary was introduced before the master. On June 24, 1902, the master filed his report, and found that the notes and mortgages were executed as alleged in the bills, and that the second mortgage was assigned by Evans to Sandall. He also found the amounts due upon the two mortgages, and that the matters and things set up in the answers and cross-bills of Mary E. Roderick were not sustained or established by the proofs, and that Mary E. Roderick did not make out her defense against the mortgage of Catherine McMeekin, as set up in her answer. The master found in his report that the mortgage of defendant in error, Catherine McMeekin, was, at the time of filing her bill, a valid lien upon the mortgaged premises, and that she was entitled to the usual decree of foreclosure.

The master closed his report as follows: "I further report that, at the argument of said case before me, the solicitor for the said complainant, Isaac Sandall, stated to me that he did not claim, or ask, any findings or report of any right of the said complainant, Isaac Sandall, to any relief in this cause, and I therefore find and report that the said complainant, Isaac Sandall, is not entitled to any relief herein, and that his said bill should be dismissed for want of equity."

Seven lengthy objections were filed to the master's report by Mary E. Roderick as defendant and cross-complainant, which objections were overruled by the master, and subsequently filed as exceptions to the report. These exceptions were overruled, and the master's report was approved and confirmed by the court.

Thereupon, on June 24, 1902, the court rendered a decree, finding the amount due upon the mortgage executed by Hicks to defendant in error, McMeekin, to be $1076.58, and the sum of $50.00 to be due for attorney's fees, and rendering the usual decree of foreclosure and sale in case of a default in the payment of the amount so found due. The decree also contained the following: "It further appearing to the court from the said master's report, filed in this cause, that, at the argument of said cause before the said master in chancery, the said solicitor for the complainant, Isaac Sandall, stated to him that he did not ask any finding or report in favor of the said complainant, Isaac Sandall, and the said master in chancery having so reported to the court that he therefore found that the said complainant, Isaac Sandall, was not entitled to any relief in this cause, and that his said bill of complaint, which was consolidated with the bill of complaint of said complainant, Catherine McMeekin, should be dismissed for want of equity; and the court further finds that the said solicitor for the said Isaac Sandall, having here in open court stated that he asks for no relief upon the said bill of complaint, filed by the said

Isaac Sandall, on account of the matters and things set forth and averred by him in his said bill of complaint; it is therefore, on motion of the solicitor for the said complainant, Isaac Sandall, ordered, adjudged and decreed by the court, that no findings whatever of the matters and things, involved herein, be made, so far as the said Isaac Sandall is concerned, but that this proceeding be dismissed without prejudice to him; to which dismissal no objection is made."

WILLIAM L. PIERCE, for plaintiff in error.

ROBERT W. WRIGHT, for defendants in error.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The main and material controversy in this case is between the defendant in error, Catherine McMeekin, holding a mortgage upon the property in question executed by Howard H. Hicks, and Mary E. Roderick, claiming to have been a purchaser of said premises from Hicks. The question is, whether the mortgage is entitled to priority over the interest or equity of the alleged purchaser.

Hicks executed the mortgage to defendant in error, McMeekin, on September 4, 1893, and the same was recorded on September 5, 1893. At that time the title of record stood in Hicks, and there was no title whatever in plaintiff in error, Mary E. Roderick. The note and mortgage, executed by Hicks to McMeekin, were given to secure $900.00, loaned by McMeekin to Hicks for the purpose of erecting a house upon the mortgaged premises. The mortgage was taken by Mrs. McMeekin in good faith, and its validity and binding force have always been admitted and recognized by Hicks, who paid the interest thereon from September, 1894, to September, 1899.

There is no evidence that, when Hicks executed the mortgage to Mrs. McMeekin, she had any actual notice

of any interest of Mrs. Roderick in the property. But it is claimed by the latter that she was in the open, notorious and adverse possession of the premises when Mrs. McMeekin took her mortgage, and that such possession operated as constructive notice to Mrs. McMeekin, and put her upon inquiry as to the rights of Mrs. Roderick. Substantially, the only question in the case of any importance is whether the possession, claimed to have been held by Mrs. Roderick, operated as notice to the mortgagee, or in such a way as to put the mortgagee upon inquiry.

In the first place, it may be well to consider the nature of the claim to the property, or the interest in the property, as set up by Mrs. Roderick. It is not altogether clear to our minds that she really had such an interest as she claims to have had. The plaintiff in error, Mrs. Roderick, was the sister of Howard H. Hicks, who was a widower and lived with his sister. Mrs. Roderick lived in a house in South Belvidere, the title to which stood in her or her husband. Her testimony, as first given in the case, shows conclusively that her brother, Howard H. Hicks, lived with her in this house in South Belvidere, and was a member of her family, and that he continued to be a member of her family up to the time the house was erected upon the premises here in controversy. It is true that, when testifying a second time some two months after her first testimony was given, she sought to qualify, if not deny, her statements upon this subject, but the balance of the testimony is in favor of the contention, that her brother was and continued to be a member of her household.

She says that, on February 20, 1893, the premises in question, being in North Belvidere, and which were then vacant, were sold to her by her brother, and that a contract in writing was executed, embodying the terms of such sale. The terms, according to her evidence, were these: that she should deed to her brother the house, in

which she lived in South Belvidere, subject to two mortgages thereon, one for $500.00 and the other for $150.00, making $650.00 in all, and that she should allow her brother to retain $600.00, claimed to have been her share in her deceased mother's estate and claimed to be in the hands of her brother as administrator of that estate. Her claim is that her equity in the house in South Belvidere was worth $700.00. In return for the $600.00 and for a deed of the South Belvidere house, subject to the mortgages aforesaid, her brother, Howard H. Hicks, was to deed to her the lot here in controversy after having erected a house upon the same, and that she was to receive the deed when the house should be completed. Her brother, it is conceded, never did execute to her a deed of the premises here in controversy. The alleged contract of February 20, 1893, between herself and her brother was not produced. He is unable to say whether there was any contract in writing or not, and, if there was, she was unable to find it.

Whether or not $600.00 were coming to plaintiff in error from her mother's estate is a matter left somewhat in doubt by the testimony. No papers or records are produced to show that Howard H. Hicks was ever appointed administrator of his mother's estate, or that he ever settled with such estate, or that he ever had any money belonging to such estate. It is said that the mother lived in Arkansas, and there owned a plantation, and that this plantation was sold; but Mrs. Roderick, who must have been one of the heirs, does not remember that she made any deed of the plantation, nor does it appear what the plantation was worth. At one time in her testimony, Mrs. Roderick says that her mother's estate was worth $2000.00, and at another time that it was worth $3000.00, and that there were seven heirs, herself and six brothers. One of her brothers testifies that the plantation was turned over to the wife of a deceased brother, and did not belong to the mother at the time

of her death.   If the estate was only worth $2000.00, or
$3000.00, it is difficult to understand how the share of the
plaintiff in error amounted to $600.00.   But she says that
it was agreed among her brothers that she should have
$600.00 out of the estate.   She says that her brother exe-
cuted to her a receipt for the sum of $600.00 which was
in his hands, but she was unable to produce the receipt,
and it was not introduced in evidence.

Even if it be admitted, however, that she did make
the contract in question with her brother for the convey-
ance to her of the property here in controversy, we are of
the opinion that her possession was not of such a char-
acter as to operate as notice to Mrs. McMeekin, or to put
her upon inquiry.   The evidence leaves it doubtful when
the house erected upon the premises in question was
completed or when it was begun.   Plaintiff in error ad-
mits that it was a part of the contract, that her brother
was to build a house for her upon the lot in question.

The testimony tends to show that, just before or about
the time when the erection of this house was begun, the
plaintiff in error and her son and her husband were upon
the lot, and set out some shrubbery, and set the stakes
for a cellar.   But the evidence is quite clear that How-
ard H. Hicks built the house upon the lot in controversy.
He employed the contractor and other workmen who
erected the house, and paid them, and was in possession
of the house up to the time of its completion.   Plaintiff
in error's testimony, as originally given, and that of the
contractor, was that Howard H. Hicks, her brother, made
the bargain with the carpenters for building the house;
that he made the bargains for the lumber; that he made
the bargain for digging the cellar; that he made the bar-
gain for the stone and mason work; that he made the
bargain for all of the work that was performed in the
building of the house.   She also states that her brother,
Howard, paid the workmen, and paid for the erection
of the house.   He was there every day, and talked with

the men while they were building the house, and gave instructions in regard to the erection of the same, although he permitted certain changes to be made in accordance with suggestions made by her. The contractor, who did the carpenter work, states that, in constructing the house, he made the contract with Howard H. Hicks; that Hicks furnished him the plans and specifications, and paid him for his work and materials, and that he delivered the house to Hicks when it was completed. The testimony is quite clear, that Hicks was in charge of the construction of the house, and was the person, to whom all questions that arose were ultimately referred to be decided. The evidence is not altogether clear just when the house was completed. The mortgage was finally executed on September 4, and recorded on September 5, and it is not proven that the house left the possession of Howard H. Hicks before the mortgage was executed. A man, named Fred J. Evans, was active in obtaining the money from Mrs. McMeekin for Hicks, in order to build the house, and to him various installments of the money were paid in order to be used in the construction of the house. Mrs. McMeekin had $900.00 deposited in a bank in Belvidere, and had a certificate of deposit for the same. The banker says that she did not have an account current. The money was paid out as the construction of the house proceeded, and certificates of deposit for various amounts were issued by the bank, payable to the order of Mrs. McMeekin, and by her endorsed. One of these certificates of deposit is in evidence. It is for the sum of $245.00, dated September 1, 1893, and, according to the stamp of the bank on the face of it, was paid on September 4, 1893. What was there in the character of the possession of the house to give the mortgagee any notice that Howard H. Hicks was not the owner of the property? The title of record stood in Hicks; the money for the erection of the house was paid to Hicks; he was in possession of the house in person and through the con-

tractors and workmen employed by him, and was present upon the premises every day superintending the construction of the house. The mortgagee had a right to suppose, not only that he was the owner because the record showed him to be the owner, but that he was in possession because he was using the money paid to him by her to build the house. If it be a fact that Mrs. Roderick was upon the premises setting out shrubbery or superintending the construction of the cellar, or cleaning the windows, her possession, as indicated by such acts, can not be regarded as anything more than a joint possession with her brother. Possession to be notice must be not only open and visible, but exclusive. A possession, which is held jointly with another person, is not such a possession as is exclusive, or operates as notice, or to excite inquiry. (*Travers* v. *McElvain,* 181 Ill. 382; *Truesdale* v. *Ford,* 37 id. 210; *Mason* v. *Mullahy,* 145 id. 383; *Harris* v. *McIntyre,* 118 id. 275; *Hoover* v. *Redmond,* 15 Ill. App. 427).

We do not regard the testimony of Hicks himself, to the effect that he was not the owner of these premises at the time when he executed the mortgage, as having any weight. He represented himself to be the owner when he executed the mortgage, and in the mortgage he states that he mortgages and warrants the property to the mortgagee. By the use of the words, "and warrants," the mortgage executed by him is to be construed as if full covenants of seizin, good right to convey against encumbrances, quiet enjoyment, and general warranty, were fully written therein. (1 Starr & Curt. Ann. Stat.— 2d ed.—p. 924; sec. 11, Conveyance act.) Inasmuch as, by the terms of his deed, he said that he had title and covenanted to defend and make it good, he was estopped from denying that he had title when he made the mortgage. (*Beasley* v. *Phillips,* 20 Ind. App. 188; *Dobbins* v. *Cruger,* 108 Ill. 188). In *Dobbins* v. *Cruger, supra,* we said: "The principle is, a warrantor will not be permitted to assail a title he has solemnly covenanted to maintain. It would

be a solecism to say a party may destroy that which, at the same instant, he must uphold." It is well settled that, "when one gives a mortgage upon land to secure a debt, he is estopped by the recitals in his contract creating the lien, from denying his title to the mortgaged premises." (*Hill* v. *O'Bryan,* 104 Ga. 143; *Wagnon* v. *Pease,* 104 id. 436). In *Wagnon* v. *Pease, supra,* it is said: "The general rule is, that a mortgagor is estopped from setting up, in resistance to a foreclosure proceeding, that he had no right or title to the mortgaged premises."

It is said, however, that the defendant in error, McMeekin, had notice of the alleged interest of the plaintiff in error because Fred J. Evans was her agent, and he had such notice. Leaving for the present the question whether Evans was really the agent of Mrs. McMeekin, it may be well to inquire what the evidence shows as to any notice to Evans of the interest of plaintiff in error in the premises. Plaintiff in error, the first time she took the witness stand, testified that she insured the property in 1893 for ten years with Fred J. Evans. It is said that, inasmuch as he insured the property in her name, he was affected with notice that she claimed to own it, and that, when subsequently he acted, if he did act, for Mrs. McMeekin in the matter of lending her money, she was affected with the notice of plaintiff in error's rights, which is said to have been thus previously acquired by the agent of Mrs. McMeekin. At a subsequent date, plaintiff in error testified that she did not know whether she had ever seen Evans about the insurance or not. She also testified at another time that the property had been insured with another agent than Evans, but she was unable to tell when. No policy of insurance, or document of any kind, was produced to prove the fact that the property had been thus insured in her name. On the contrary, an insurance policy is produced dated September 19, 1900, showing that the premises on that date were insured in the name of Howard H. Hicks as owner.

If the plaintiff in error had obtained insurance upon the premises for ten years from 1893, the ten years would not expire until 1903; and this being so, it is difficult to understand why the premises were insured in the name of her brother, Howard H. Hicks, in 1900 before the ten years expired.

Even if it were true, however, that Evans did have notice of plaintiff in error's claim to the ownership of the property for the reason already stated, and even if it be true that he afterwards was the agent of Mrs. Mc-Meekin in the loaning of her money, still it is not clear that his knowledge thus obtained would bind Mrs. Mc-Meekin. We have held that "a party cannot be charged with notice of facts within the knowledge of his attorney, of which the latter acquired knowledge while acting as the attorney of another person." (*McCormick* v. *Wheeler*, 36 Ill. 114; *Herrington* v. *McCollum*, 73 id. 476).

We are inclined to think, however, that the evidence shows that Evans was rather the agent of Hicks to procure the loan of the money than the agent of Mrs. Mc-Meekin to lend her money for her. She placed her money in the bank, with instructions to the cashier of the bank to pay it out to Evans for Hicks as the building progressed, and she gave to Evans certificates of deposit in small amounts, endorsed to him by her for the purpose of enabling him to obtain the money from the bank for Hicks. The testimony of the contractor shows that the building was turned over to Hicks when it was completed, and his testimony, in connection with the documentary evidence in the record, tends strongly to show that the building was not completed before the mortgage was executed. The general rule is, that the knowledge of the agent must be acquired during his agency, and in the course of the same transaction from which the principal's rights and liabilities arise, in order to affect the principal with notice, or, in other words, that where an agent has acquired information before the commence-

ment of his agency, the principal will not be charged
with constructive notice thereof. An exception to this
rule is, where the information obtained by the agent in
a former transaction is so precise and definite that it is,
or must be, present to his mind and memory while en-
gaged in the second transaction. (*Snyder* v. *Partridge*,
138 Ill. 173; *Burton* v. *Perry*, 146 id. 71). No such state
of facts exists here, as would tend to affect Mrs. Mc-
Meekin with knowledge acquired by Evans by reason
of the circumstances already mentioned.

It is furthermore claimed by the plaintiff in error that
the court erred in dismissing the original bill, filed by
Isaac Sandall for the foreclosure of the second mortgage
while the cross-bill of the plaintiff in error was on file.
The statute provides that "no complainant shall be al-
lowed to dismiss his bill after a cross-bill has been filed
without the consent of the defendant." (Chancery act,
sec. 36; 1 Starr & Curt. Ann. Stat.—2d ed.—p. 584). By
the express terms of this statute the complainant may
dismiss his bill after a cross-bill has been filed, if the
defendant consents thereto. It was evidently the view
of the trial court that, in this case, the defendant and
cross-complainant did consent to such dismissal of the
original bill, or that her conduct was such as, in the
opinion of the court, to amount to a consent to such dis-
missal. The master found in his report, as a matter of
fact, that Sandall did not claim or ask any findings or
report of any right to any relief in the case, and that
he was, therefore, not entitled to any relief, and recom-
mended that his bill be dismissed for want of equity.
Plaintiff in error filed no objection before the master,
nor any exception before the court, calling in question
this finding of the master's report. Accordingly, the
court in its decree, found that the proceeding should be
dismissed without prejudice to Sandall, and in the decree
used these words: "To which dismissal no objection is
made." Plaintiff in error was silent upon this subject

when the master's report came in, and was silent when the decree of the court was entered, and such silence must be construed as giving consent. Undoubtedly, it is not required by the rules of chancery practice that exceptions should be taken to the various decisions of the court, made in the progress of a chancery cause. (*Miller* v. *Whelan*, 158 Ill. 544, and cases there cited; *VonTobel* v. *Ostrander*, 158 id. 499). But where a cause is referred to a master to report the proofs with his findings thereon, and his conclusions therefrom, and the party appears by counsel and takes part in proceedings before the master in reference to the matters referred to him without objection thereto, such party ought not to be permitted to raise the objection for the first time in this court. "The master's report must be held conclusive of all questions covered by it, not excepted to." (*Cheltenham Improvement Co.* v. *Whitehead*, 128 Ill. 279; *Whittemore* v. *Fisher*, 132 id. 243; *Gehrke* v. *Gehrke*, 190 id. 166). Where, on a reference before a master, both parties treat a matter as one upon which the master has the power to pass, they must both be held to have voluntarily submitted such question to the master, and, where no objection to the finding of the master in relation thereto is made before him or before the trial court, it is too late to make it in this court. (*Gehrke* v. *Gehrke, supra,* and cases there cited).

We find no error in the record sufficient to justify us in reversing the decree. Accordingly, the decree of the circuit court is affirmed.                    *Decree affirmed.*