CRAMER *v.* REMMEL.

Opinion delivered January 28, 1918.

1. BONA FIDE PURCHASER—LAND.—For a *bona fide* purchase of land, three elements are essential, viz: a valuable consideration, the absence of notice, and the presence of good faith.

2. BONA FIDE PURCHASER—PURCHASE BY QUITCLAIM DEED.—A purchaser by quitclaim deed may occupy the position of innocent purchaser.

3. LIS PENDENS—FAILURE TO FILE NOTICE.—A suit affecting the title or any lien on any real estate is not *lis pendens* until a notice of the pendency of the action is filed in accordance with the statute.

4. BONA FIDE PURCHASER—LAND.—Appellee held to be a *bona fide* purchaser of land, where he paid full value for the same, and the record title appeared to be good, and this was not affected by the fact that he took under a quitclaim deed.

Appeal from Arkansas Chancery Court; *John M. Elliott,* Chancellor; affirmed.

*Harnwell & Young,* for appellants.

1. Thane never had any title to the lots. They were deeded to him as *trustee* and he conveyed to Remmel in his individual capacity by a quitclaim deed. Such a deed is always suspicious. The deed to Thane was only a mortgage, and the debt had been paid. Neither Thane nor the bank had anything to convey to Remmel, and the quitclaim deed conveyed nothing, as Remmel had notice and the mortgage debt had been paid. Remmel's only remedy was to sue Thane or the bank for the money he **paid.**

Cramer held valid deeds from the Price heirs. The burden was on Remmel, and he has failed. Cramer paid more than the property was worth, and Remmel knew Cramer bought the lots. A quit-claim deed conveys no title. The property was in litigation and Remmel is charged with notice of the *lis pendens.*

2. Cramer is not estopped. 39 Ark. 131; 48 *Id.* 409; 50 *Id.* 128; 94 *Id.* 141, 107.

The real title was never in Thane; he was merely a trustee, and when the trust was ended the property reverted to the grantee of the Price heirs, Cramer. The Thomas deed to Thane and Thane's deed to Remmel are nullities. The decree should be reversed and Remmel's deed quashed.

*Wallace Townsend,* for appellee.

1. Remmel's record title is perfect, and he had a right to rely on it as an innocent purchaser, without notice, for a valuable consideration and acting in good faith. 120 Fed. 819; 131 *Id.* 668; 200 U. S. 321; 44 Ark. 153; 118 *Id.* 516; 122 *Id.* 445. The three essentials of an innocent purchaser are met; valuable consideration, absence of notice and good faith. 95 Ark. 582. Cramer has no title and there is no showing that he ever paid any consideration.

2.   Cramer is estopped.    39 Ark. 131; 48 *Id.* 409; 94 *Id.* 141-146, 107-110.

3.   *Lis pendens* has been abrogated by statute.    122 Ark. 445; 118 *Id.* 139; 123 *Id.* 532; Kirby's Digest, § 5149.

4.   A purchaser must take notice of all prior recorded instruments.    87 Ark. 490-2; 84 *Id.* 1; 39 Cyc. 1727.

5.   The findings of the chancellor will not be disturbed unless clearly against the preponderance of the evidence.    122 Ark. 600, 604.    The decree should be affirmed, because (1) Thane had the real legal title and passed it to Remmel; (2) Remmel was an innocent purchaser for value, in good faith; (3) Cramer is estopped.

STATEMENT OF FACTS.

On the 17th day of July, 1915, H. L. Remmel instituted this action in the chancery court against D. L. Cramer and others to quiet his title to seventy-eight lots in the city of Stuttgart, Arkansas County, Arkansas. The material facts are as follows:

N. B. Price died intestate owning the lots in controversy, as well as numerous other lots, and several tracts of land.   He left surviving him five children, who were his sole heirs at law.   Among them were two married daughters, viz: Myrtle Kimberlin and Maude P. Quilling. Maude Quilling was the wife of M. W. Quilling, Jr. Maude P. Quilling was engaged in business which her husband managed for her.   She mortgaged her part of the estate to the Desha Bank & Trust Company to secure an indebtedness of several thousand dollars, which she owed the bank.   Henry Thane was the president of the bank and acted for it in the transaction with the Quillings.   Partition was had of the estate.   Maude P. Quilling and her husband wished to purchase the interest of Myrtle Kimberlin, which involved most of the seventy-eight lots in controversy in this suit.   Henry Thane, for the Desha Bank & Trust Company, agreed to advance one thousand dollars for the purchase of Myrtle Kimberlin's interest in the estate of N. B. Price, deceased.   It was agreed between the parties that Myrtle Kimberlin should deed her

interest in the estate direct to Henry Thane, in trust for
the Desha Bank & Trust Company. At the same time
Maude P. Quilling deeded several lots to Henry Thane in
trust for the Desha Bank & Trust Company. A part of
the understanding between the parties was that the trans-
action should be in the nature of a mortgage and would
be additional security to the Desha Bank & Trust Com-
pany for what Maude P. Quilling owed it. It was under-
stood that Thane should first be repaid the thousand dol-
lars purchase money of the lots and that the amount over
that received for the lots should be applied towards the
payment of the indebtedness to the bank. The Quillings
were to have charge of the sale of the lots and Thane was
to make deeds to the lots to the persons to whom they
sold them. The deed from Myrtle Kimberlin to Henry
Thane was executed on February 20, 1908, and was duly
filed for record. This conveyance embraced nearly all
of the lots in controversy. On October 5, 1909, Maude P.
Quilling conveyed a few of the lots in controversy to
Henry Thane. Both of these deeds were quitclaim deeds.
On the 26th day of August, 1912, the Desha Bank & Trust
Company and Henry Thane, trustee, instituted an action
in the chancery court against M. W. Quilling, Jr., and
Maude P. Quilling, asking for a judgment against the
defendants for the balance due the bank and for foreclos-
ure of the mortgage given to secure the same. The chan-
cellor entered a decree in this cause on the 10th day of
September, 1914, for the balance due the bank by the
Quillings, and held that the deed from Myrtle Kimberlin
to Henry Thane, trustee, was a mortgage to secure the
sum of one thousand dollars to the Desha Bank & Trust
Company. The Quillings moved to Little Rock and be-
came indebted to H. L. Remmel in the sum of $385 for
house rent. On April 23, 1913, M. W. Quilling, Jr., gave
Remmel an order on D. L. Cramer for that sum to be paid
out of the sale of property of the Quillings in the city of
Stuttgart. On May 29, 1913, Cramer wrote a letter to
Remmel in which he accepted the order. In the mean-
time, Remmel had become interested in the purchase of

the lots in controversy. Thus far the facts are practically undisputed; but from this point on there is a direct conflict in the testimony of Remmel and Cramer.

According to the testimony of H. L. Remmel, M. W. Quilling, Jr., told him there was a deed for these seventy-eight lots executed by Henry Thane, at the Bank of Commerce in Little Rock and a draft for $2,500; that the name of the grantee was left blank in the deed by Henry Thane and Quilling had the authority to fill in the blank by inserting the name of the person to whom he should sell the lots. Remmel had an abstractor in Little Rock to examine the title to the lots and was informed that the title was in Henry Thane and that he had a good title thereto. On May 3, 1913, an attorney of Stuttgart, Arkansas, wrote to D. L. Cramer that he thought the title to the lots in controversy in Henry Thane was good. This letter was shown to Remmel. On May 28, 1913, Remmel paid the draft for $2,500. M. W. Quilling, Jr., negotiated the sale of the lots to Remmel, and the deed from Thane to Remmel was executed and delivered to Remmel at his request. Quilling gave the Bank of Commerce a written order to deliver the deed to Remmel. Remmel said that Cramer knew all about the negotiations between him and Quilling and assisted Quilling in making the sale to him. He also testified that he thought Cramer went with him and Quilling to the bank to direct that the deed should be turned over to him; that he did not know until months afterwards that Cramer claimed any interest in the lots; that he paid full value for the lots and believed that he was getting a good title thereto. The deed to Remmel was a quitclaim deed, and was filed for record on June 18, 1913.

Henry Thane corroborated the testimony of Remmel as to the execution of the deed and the payment of the draft by Remmel. He testified that the $2,500 paid by Remmel was received and credited by the Desha Bank & Trust Company to the credit of Quilling; that the deed in question was made at the request of M. W. Quilling, Jr.; that the sale to Remmel was the main sale of any

property that came from Mrs. Kimberlin and with the possible exception of an eighty-acre tract was the first sale from the Kimberlin interest; that M. W. Quilling, Jr., was the agent for his wife and that he transacted all her business with him as such agent.

D. L. Cramer lived in Little Rock and was a real estate agent. According to his testimony, M. W. Quilling, Jr., became indebted to him and they executed an agreement concerning the lots in controversy as follows:

"Little Rock, Ark., April 9, 1913.

"This agreement made this day by M. W. Quilling, Jr., and D. L. Cramer is as follows: M. W. Quilling, for Maude Quilling and himself, agrees to sell to D. L. Cramer sixty-six lots which are held by mortgage by the Bank of Commerce, at Stuttgart, Ark., at the price of $35 per lot. Thirty-four (34) lots held by bank in Little Rock, Ark., at $20 per lot, and seventy-eight lots held by Henry Thane at $35 per lot, providing satisfactory arrangements can be made by D. L. Cramer for the payment of present indebtedness on said lots or for release of title.

"D. L. Cramer.
"M. W. Quilling, Jr."

On September 30, 1913, M. W. Quilling, Jr., and Maude P. Quilling executed a quitclaim deed to Cramer to these lots. On October 7, 1913, Myrtle Kimberlin executed a quitclaim deed to him to the lots. Cramer denied that he went to the bank with Remmel and Quilling when the latter directed the bank to turn over to Remmel the deed executed to Henry Thane. Cramer also denied that he had anything to do with the sale of the lots to Remmel. He stated that he and Remmel contemplated buying together all the lots owned by the Quillings in the city of Stuttgart, and having a sale thereof for their joint interest; that Remmel, after his purchase of the lots in controversy, declined to go any further with their venture. Other facts will be stated or referred to in the opinion.

The chancellor found the issues in favor of Remmel and a decree was entered accordingly. The defendant Cramer has appealed.

HART, J., (after stating the facts). (1-2) In *Manchester* v. *Goeswich,* 95 Ark. 582, it was held that the essential elements of a *bona fide* purchase of land are three, viz: a valuable consideration, the absence of notice, and the presence of good faith.

In *Moore* v. *Morris,* 118 Ark. 516, the court held that the mere fact that there is a holding under a quitclaim deed does not defeat the claim of an innocent purchaser. The court said: ''That fact is merely considered as a circumstance in determining whether or not the purchaser was in fact innocent of knowledge of any adverse claim, but the purchaser may show, notwithstanding the form of conveyance, that he was in fact without any information of any other claim of ownership.'' See also *The Henry Wrape Co.* v. *Cox,* 122 Ark. 445. Tested by these principles of law, as applied to the facts of the present case, we think the decision of the chancellor was correct.

(3-4) In the foreclosure suit of the Desha Bank & Trust Company against Quilling, the chancellor held that the conveyance by Myrtle Kimberlin to Henry Thane, trustee, was intended as a mortgage and upon appeal to the Supreme Court the decree of the chancellor was affirmed. *Desha Bank & Trust Co.* v. *Quilling,* 118 Ark. 114. Neither Remmel nor Cramer were parties to that suit, and of course are not bound by the decree in that case. However, the record in the present case shows the transaction to have been intended as a mortgage. The Desha Bank & Trust Company furnished the Quillings one thousand dollars with which to purchase the interest of Myrtle Kimberlin. It was agreed that the deed should be made direct from Myrtle Kimberlin to Henry Thane, as trustee for the bank. The deed was intended as security not only for the purchase price of one thousand dollars but for the other indebtedness of the Quillings to the bank. M. W. Quilling, Jr., was to have charge of the sale of the lots and Thane was to execute deeds to the purchasers as directed by Quilling and to receive the purchase money and credit it on the indebtedness of the Quillings to the bank. This was done in the present case.

Quilling made the sale to Remmel and in writing directed the deed from Thane to be delivered to him. It is true the deed was a quitclaim one, but Remmel paid full value for the lots and the amount so paid by him was credited on the indebtedness of the Quillings to the Desha Bank & Trust Company. The legal title to the lots was in Henry Thane and Remmel paid full value for them in ignorance that there was any other claim to the lots. He testified that he thinks that Cramer went with him and Quilling to the bank to have the deed from Thane to the lots turned over to him. It is true Cramer denies any active participation in the sale to Remmel, but the record shows that he knew Remmel was purchasing the lots and paying full value for them. During the period of the negotiation Cramer received a letter from his attorney at Stuttgart stating that he thought that the title to the lots was in Henry Thane. Other letters written by Cramer during the negotiation tends to show that he knew that Remmel was trying to purchase the lots. He admits that he stated after the sale had been completed that he told Remmel that he thought his title to the lots was good. In explanation he states, however, that he was relying upon information given him by his attorney at Stuttgart before the sale was completed and that he afterwards made an investigation on his own account and came to the conclusion that Remmel's title was inferior to his own. Cramer contends that it was the intention of Remmel and himself to purchase all the lots owned by the Quillings at Stuttgart and to sell them for their joint benefit; that Remmel declined to go further with the transaction after he had completed the purchase of the lots in question and acted in bad faith with him. That was a collateral transaction, and we have nothing to do with it in the decision of the present case. We think the record shows that Remmel was a *bona fide* purchaser of the lots in question and paid for them all that they were worth. He testifies positively that he did not know of the claim of Cramer to the lots. He purchased the lots at the instance of Quilling, and neither Quilling nor Cramer ever

disclosed to him that Cramer claimed any interest in the lots. It is true that the written contract between Quilling and Cramer relative to the purchase of the lots by Cramer was executed before Remmel purchased the lots, but this contract was not of record, and, as we have already seen, Remmel purchased the lots without knowing anything about its existence. There was a perfect record title in his grantor, and under the circumstances of this case he will be deemed to be an innocent purchaser and protected as such although he took from his grantor by a quitclaim deed. *Case* v. *Caddo River Lbr. Co.*, 126 Ark. 240.

No notice of the pendency of the case was filed in accordance with the statute in the foreclosure suit of the Desha Bank & Trust Company against M. W. Quilling, Jr., and Mrs. Maude P. Quilling. Therefore, Remmel had a right to rely upon the record title, notwithstanding the pendency of this suit in the Arkansas Chancery Court.

In the case of *The Henry Wrape Co.* v. *Cox,* 122 Ark. 445, the court said: "The common law and equity rule of *lis pendens* has been abrogated in this State by statute. Since the passage of the statute a suit affecting the title or any lien on real estate is not *lis pendens* until a notice of the pendency of the action is filed in accordance with the statute."

The decree will be affirmed.