## SCOTT v. CARNES.

Opinion delivered April 20, 1931.

*C. M. Martin* and *H. G. Wade,* for appellant.

*L. B. Smead* and *Gaughan, Sifford, Godwin &
Gaughan,* for appellee.

HART, C. J., (after stating the facts). Appellee seeks to uphold the decree in this case upon the authority of *Cramer* v. *Remmel,* 132 Ark. 158, 200 S. W. 811, on the ground that he is a *bona fide* purchaser for value without notice of the land in question. The evidence introduced by appellee shows clearly that he is a purchaser for value in good faith of the land in question. This much is conceded by counsel for appellant, but it is strongly insisted that appellee had notice of the rights and equities of appellant.

Where a purchaser shows that he has paid a valuable consideration in good faith, the burden of showing that he purchased with notice is on the one alleging it or who relies on the notice to defeat the claim of *bona fide* purchaser. *Osceola Land Co.* v. *Chicago Mill & Lumber Co.,* 84 Ark. 1, 103 S. W. 609; and *Oil Fields Corporation* v. *Dashko,* 173 Ark. 533, 294 S. W. 25.

Since appellant relies on notice, actual or constructive, to defeat the claim of appellee as a *bona fide* purchaser, it devolved upon her to show that appellee had notice. It was shown by appellant that she had received a deed to a one-half interest in the land from Rogers, the owner of it in 1911, but the deed was never acknowledged or recorded until after the present suit was instituted. Appellant resided on the land at the time the deed was executed to her and moved into a house on the part of the land claimed by her in this suit in 1915 and has resided there ever since. Rogers, who executed the deed to her, resided in a smaller house near the one in which she lived.

Appellant invoked the rule that possession by a person under a deed, though unrecorded, is notice of his rights and interest in the property. The reason is that actual possession is evidence of some title in the possessor and puts the subsequent purchaser or mortgagee on notice as to the title which the occupant holds and claims in the property. Hence it is said, that actual, visible and exclusive possession is notice to the world of

the title and interest of the possessor in the property, and it is incumbent upon the subsequent purchaser or mortgagee to make diligent inquiry to learn the nature and interest of the claim of such possessor; and if he does not do so, notice will be imputed to him. *American Building & Loan Assn.* v. *Warren*, 101 Ark. 163, 141 S. W. 765; and *Naill* v. *Kirby*, 162 Ark. 140, 257 S. W. 735. Many other cases in support of the rule might be cited, but it is too well-settled in this State to need any further citation of authorities.

We do not think, however, that the general rule has any application under the facts of this case. In all the cases on the question, it is said that the possession of land which will impart notice of title thereto must be adverse, exclusive, unequivocal, and must be inconsistent with the claim of any other person. The possession must be sufficiently distinct and unequivocal so as to put the purchaser on his guard and such notice that is not likely to be misunderstood or misconstrued. *Townsend* v. *Little*, 109 U. S. 504, 3 S. Ct. 357.

Tested by this well-settled rule, it is plain that the physical occupancy by appellant was not such possession as to put a purchaser on inquiry and charge him with constructive notice. In February, 1911, W. L. Rogers, who had been the owner of the land for many years, executed a deed to Eller Scott to an undivided one-half interest in the land. Rogers was a white man and Eller Scott a negro woman who had lived on his farm for many years. In *Walden* v. *Williams*, 128 Ark. 5, 193 S. W. 71, the court said that, in order that actual occupancy be constructive notice of ownership, it must be apparently exclusive. Otherwise, the possession is presumed to follow the true title, and those who deal with the owner of the record title are warranted in treating him as being the exclusive owner. There, as here, the parties owned the land as tenants in common, and both occupied the land. The court said that the occupancy, being a joint one, was referable to the owner of the record title, and

that the purchaser for value was not charged with constructive notice of the adverse interest of the tenant in common who had no record title. Among the cases cited is *Roderick* v. *McMeekin,* 204 Ill. 625, 68 N. E. 473. In that case the court said:

"The mortgagee had a right to suppose, not only that he (mortgagor) was the owner because the record showed him to be the owner, but that he was in possession because he was using the money paid to him by her to build the house. If it be a fact that Mrs. Roderick (claiming a joint interest with her brother) was upon the premises setting out shrubbery or superintending the construction of the cellar, or cleaning the windows, her possession, as indicated by such acts, cannot be regarded as anything more than a joint possession with her brother. Possession to be notice must be not only open and visible, but exclusive. A possession, which is held jointly with another person, is not such a possession as is exclusive, or operates as notice, or to excite inquiry."

So, in the present case, the mortgagee had a right to deal with Rogers, the mortgagor, as the exclusive owner of the land because he had the record title to it. The fact that appellant had lived on the land for many years and had borne him three children did not make it the duty of the mortgagee to go to her and inquire what interest she had in the land. The mortgagee did ask his lawyer if she could be considered Rogers' common-law wife; and, when he was informed that she could not, he made no further inquiry about the matter. He had a right to assume that she was merely living on the farm of Rogers and illegally cohabiting with him as she had been doing for many years. There was nothing whatever that would make it the duty of appellee to make any inquiries as to whether Rogers had executed to her a deed to any interest in the land. After Rogers had executed a deed to her to a one-half interest in the land, they held it as tenants in common, and Eller Scott had no exclusive or apparently exclusive possession of

the land because Rogers continued to reside upon it and manage it as he had done before.

This brings us to the question of whether or not appellee had actual notice of the rights of appellant in the land. Here the burden was upon appellant to show such notice, and whatever was sufficient to put appellee on inquiry amounts to notice of such inquiry would lead to a knowledge of the facts by the exercise of ordinary diligence. *Richards* v. *Billingslea,* 170 Ark. 1100, 282 S. W. 985, and cases cited.

The chancellor found the general issue in favor of appellee, and it cannot be said that his finding is against the preponderance of the evidence. The testimony on the question of actual notice is in irreconcilable conflict. On the one hand, Eller Scott testified in positive terms that when Dr. Wooldridge and his associates took the option contract on the land, he came to see her and she told him that she had a deed to an undivided one-half interest in the land. The land was situated within a mile of Camden, and Dr. Wooldridge testified that soon after the option contract was executed Eller Scott told him of her interest in the land. He then went back to town and told his associates in the option contracts, Luther Ellison and appellee Carnes, what Eller Scott had said to him about having a deed to an undivided one-half interest in the land. Both Carnes and Ellison denied that Dr. Wooldridge told them that he had received information that Eller Scott had an undivided one-half interest in the land by deed which she had received from W. L. Rogers. Carnes acted for Mrs. Umsted when she took the mortgage on the land and when she received the deed to it from Rogers. His knowledge would then be imputed to his principal. While he might be considered an interested person, Ellison was not. He had no interest whatever in the transaction. The transaction with Mrs. Umsted and Rogers was not based upon the option contract at all. Carnes simply acted as agent for Mrs. Umsted in the matter and subsequently obtained

a deed from her to the property. The option contract was not considered in the transaction at all. As we have just seen, the testimony on the question of actual knowledge was in direct conflict, and the chancellor was justified in finding for appellee on this point.

It is insisted, however, that the attendant circumstances turned the scale in favor of appellant. It is pointed out that Carnes knew that appellant had been living on the land for many years with Rogers and had borne him three children. This is true, and the further fact is that, at the time of the transaction, appellee asked if the signature of Eller Scott should not be obtained to the mortgage given to Mrs. Umsted by Rogers on the ground that she might be considered the common-law wife of Rogers. He was informed by his lawyers that the negro woman could not be the common-law wife or any other kind of wife of a white man in this State, and that her signature to the mortgage was not necessary. We do not think that it was his duty to inquire any further. Her actual occupancy of a house on the premises was not such possession as to put a purchaser on inquiry as to whether she had acquired an interest in the property by purchase or deed or gift. On the contrary, her occupancy was calculated to mislead a mortgagee. He would attribute her occupancy of the premises to the fact that she was living there in order to be near Rogers and illegally cohabit with him.

The option contract from W. L. Rogers to W. B. Wooldridge, J. S. Carnes, and Luther Ellison is dated January 14, 1927, and recites that it is subject to the rights of Mrs. Edna Umsted and other named parties under a certain deed of trust executed on the same day. According to the testimony of Dr. W. B. Wooldridge, he went to see Eller Scott as a physician shortly after the option contract was executed, and while at her house told her about the option they had to sell the land, and she then told him about her deed. When he got back to town, he told Carnes and Ellison what she had said about hav-

ing the deed. In another part of his testimony Dr. Wooldridge said that he did not know anything about the deed to Eller Scott until she told him about it on the occasion when he was at her house. The chancellor might have found from his testimony that Carnes did not know about the deed from W. L. Rogers to Eller Scott until after the mortgage to Mrs. Umsted and other persons had been executed. Carnes obtained title from Mrs. Umsted, and he acquired whatever title she had.

It follows that the decree will be affirmed.