TISDALE *v.* GUNTER.

4-4783

Opinion delivered November 8, 1937.

*Miles, Armstrong & Young,* for appellant.
*Franklin Wilder,* for appellee.

SMITH, J. Mrs. Grace Gunter was awarded a decree of divorce from her husband December 24, 1930. By the decree she was given one-third of her husband's personalty absolutely, and one-third of his real estate for life. The personal property was sold and the proceeds divided in accordance with the terms of the decree. Pending the division of the real estate, Charles Myers was appointed receiver with directions to collect the rents on Gunter's property. He was appointed receiver November 10, 1930, and continued to serve in that capacity until February 9, 1932. Commissioners were appointed to make partition of the lands owned by Gunter, but it does not appear when the partition was made, and the receivership continued after the partition had been made.

The receiver made several reports of his collections. These showed the rents collected on the lands assigned to Mrs. Gunter. They were for small amounts, the largest being for $77. The reports also showed rents collected on Mr. Gunter's lands. These reports were all approved, and disbursing orders were made, which directed Myers to pay the rents to Mrs. Gunter which had been collected on her lands. The receiver was directed to pay the costs incident to the receivership out of Mr. Gunter's rents, and also to pay certain sums to Mrs. Gunter's attorney out of Mr. Gunter's rents. It is undisputed that Mrs. Gunter received the gross sum of all the rents collected on her lands. None of these reports disclosed to the court that Mrs. Gunter's lands had been sold for the nonpayment of the taxes due thereon.

The two lots of land here in question, which are not all of the lands assigned to Mrs. Gunter, were sold for the nonpayment of the 1929 general taxes, and upon the expiration of the period of redemption, not having been redeemed, were duly certified to the state. The special taxes due Sebastian Bridge District for the years 1931 and 1932 became delinquent, and on November

18, 1932, a decree of the chancery court was rendered directing the sale thereof to enforce the demand. The lots were sold pursuant to this decree on December 24, 1932, to Myers, who had previously been discharged as receiver. After the expiration of the period of redemption, Myers received, on May 23, 1935, a deed from the commissioner who had made the sale. On August 18, 1932, which was slightly over six months after the discharge of Myers as receiver, he purchased the lots here in litigation from the state and received a deed executed by the state land commissioner of that date. On November 19, 1935, Myers sold the lots to John Tisdale for the consideration of $240.

On July 1, 1936, Mrs. Gunter filed this suit against both Myers and Tisdale, praying ''that the defendants be made constructive trustees,'' and that the deeds to Myers and from him to Tisdale be canceled and that title to said lots be confirmed in her for life, free from any claim of said parties.

Before the trial of the cause both Tisdale and his wife died and the cause was revived against their children as their heirs-at-law. The relief prayed was granted, without requiring Mrs. Gunter to pay the taxes for the nonpayment of which the lots had been sold, and from that decree is this appeal.

The record before us contains the court proceedings in the divorce case and the report of the commissioners making partition and the reports of Myers as receiver and the orders of court directing the disbursement of the rents collected. Myers was the only witness who testified in the case, and, as has been said, Tisdale died before the submission of the case.

Myers testified that he was a newcomer in Fort Smith and knew nothing of the bridge taxes until after his discharge as receiver, but that he did know of the delinquency for the 1929 general taxes. He testified that he spoke to Mrs. Gunter about these taxes on several occasions and suggested that they be paid, but Mrs. Gunter would not consent. He also discussed the matter with the attorney representing Mrs. Gunter, ''and he

told me it was all under mortgage, and he told me to get as much money as I could for her.'' The attorney referred to had examined Myers as a witness and did not deny the truth of this statement, nor did he ask any questions calculated to contradict it. Myers stated that he did not pay the general taxes, of which he had knowledge, because Mrs. Gunter said she required the money for her living expenses and to pay the taxes on the property where she lived, which she was trying to save.

The lots here in question had been appraised at $800, and were sold to Tisdale for $240, but there was an incumbrance on them, the amount of which was not disclosed. Myers testified that he tried without success to sell the property for $300, and that he negotiated for six months with Tisdale before selling to him for less. Tisdale estimated the value of the property at $300, but figured it might cost him as much as $100 to defend an attack on the validity of the title, as it was based upon a tax sale. It may be said, in this connection, that, while the complaint alleged the invalidity of the tax sale, no attempt was made to establish that fact. It stands, therefore, as presumptively valid. Now, while it is undisputed that Tisdale knew the title proposed to be conveyed was based upon a tax sale, and was conveyed by a quitclaim deed, there appears to be no other fact or circumstance in the record to put him upon inquiry as to the validity of Myers' title.

We abstract all the testimony tending to impute knowledge to Tisdale of the existence of a trust or to put him on notice of any defect in the title. The sale under the decree foreclosing the lien for the bridge improvement district tax occurred December 24, 1932, and Myers was the purchaser. He had then been discharged as receiver, and testified that he had no knowledge prior to his discharge of the delinquency for the improvement taxes or that there were such taxes. Upon the expiration of the period of redemption from this sale, Myers received a deed from the commissioner based thereon dated May 23, 1935, and on November 19, 1935, he executed to Tisdale a second deed, this latter being a war-

ranty deed. Myers' control of the property had ceased upon his discharge as receiver in February, 1932. No abstract of the title was asked or furnished when the quitclaim deed was executed and delivered. This suit was filed July 1, 1936, and Tisdale died August 30, 1936. An answer was filed by Mrs. Tisdale alleging that her husband was an innocent purchaser, but she, too, died before the submission of the cause.

Myers told Tisdale that he had only a tax title and endeavored, without success, for six months, to induce Tisdale to pay $300 for a deed. He turned his deeds over to Tisdale. Myers being asked if Tisdale knew he, Myers, had defrauded Mrs. Gunter, answered that he had not defrauded her. Myers knew when he was appointed receiver that all the property had gone delinquent for the nonpayment of the general taxes and was under mortgage, but he testified that "I couldn't have gotten money enough to pay all the taxes, and I couldn't pick out one certain piece and pay on it," and he did not redeem any of the lands, because Mrs. Gunter demanded that the rents be paid her. It is undisputed that he paid her all the rents collected by him on the property assigned her by the commissioners upon the partition of Gunter's estate. When asked the direct question why he had not paid the taxes, Myers answered: "Because she wanted the money to live on, and she was trying to save the place she lived in—and she never said anything about this here until she lost those places."

Upon the question of Tisdale's knowledge, Myers testified as follows: "Q. We want to know whether or not Mr. John Tisdale had notice of the fact that you were ever receiver of this property? A. No, I didn't tell him that. Q. Did he have notice of the fact, or know anything about your having any dealings with this property at all? A. If he did—I don't remember ever telling him anything about it. Q. Then Mr. Tisdale didn't have any notice of the fact that you were receiver of this property? A. No, sir. I didn't ever tell him anything about it. * * * Q. Did not Mr. Tisdale tell you that he

couldn't give you $300 for the property because some lawyer would bring suit for Mrs. Gunter and he would need the $50 to fight the suit? A. Yes, sir.''

But the testimony in its entirety furnishes no basis for the assumption that this precaution as to the price Tisdale could pay for the lots was based upon any knowledge that Myers had ever had control of the property as receiver, but was apparently based upon the common knowledge that most tax sales are attacked when title is asserted under them.

If it be conceded that Myers should have devoted the rents collected to the redemption of the lots notwithstanding Mrs. Gunter's demand that they be paid to her, and should have disclosed the tax delinquency to the court when the disbursing orders were obtained from the court, and that his failure to do so operated to create a constructive trust when he later purchased the lots, there is yet lacking any testimony charging Tisdale with knowledge of this fact which operated to divest him of his character as an innocent purchaser.

The fact that Tisdale first acquired title through a quitclaim deed does not have that effect. This is a mere circumstance to be considered in connection with all the other facts and circumstances in determining whether Tisdale was an innocent purchaser. That one may be an innocent purchaser of a title acquired through a quitclaim deed is definitely settled by numerous decisions of this court, among others the following: *Brown* v. *Nelms,* 86 Ark. 368, 112 S. W. 373; *Moore* v. *Morris,* 118 Ark. 516, 177 S. W. 6; *The Henry Wrape Co.* v. *Cox,* 122 Ark. 445, 183 S. W. 955; *Bell* v. *South Ark. Land Co.,* 129 Ark. 305, 196 S. W. 117; *Cramer* v. *Remmel,* 132 Ark. 158, 200 S. W. 811; *Staggs* v. *Joseph,* 158 Ark. 133, 249 S. W. 566.

It is argued that Tisdale was not an innocent purchaser because the receivership proceeding was in his chain of title. It was held in the case of *Green* v. *Maddox,* 97 Ark. 397, 134 S. W. 931, that ''Every purchaser who holds under a conveyance through which he must trace his title is bound by whatever is contained in it. It is his imperative duty to obtain and examine all the

instruments which constitute essential links in his chain of title, and he is conclusively presumed to know all the recitals and matters contained therein affecting the title or the estate, whether they are recorded or not.'' Among other cases to the same effect are the following: *Stroud* v. *Pace,* 35 Ark. 100; *Gaines* v. *Summers (Saunders),* 50 Ark. 322, 7 S. W. 301; *Turman* v. *Sanford,* 69 Ark. 95, 61 S. W. 167; *Thompson* v. *Bowen,* 87 Ark. 490, 113 S. W. 26; *Burel* v. *Baker,* 89 Ark. 168, 116 S. W. 181; *White* v. *Moffett,* 108 Ark. 490, 158 S. W. 505; *Moore* v. *Morris,* 118 Ark. 516, 177 S. W. 6; *The Elk Horn Bank & Trust Co.* v. *Spraggins,* 182 Ark. 27, 30 S. W. (2d) 858; *Etchison* v. *Dail,* 182 Ark. 350, 31 S. W. (2d) 426.

But these cases are not applicable here for the reason that the divorce decree and the proceedings thereunder were not a link in Tisdale's chain of title. To constitute a deed or a decree a link in a chain of title, of which a subsequent purchaser is affected with notice, it must be a part of the title, a thing to be shown to establish title. If one, to prove his title, must rely upon and make proof of a deed or decree to establish title, then it is a link in the chain of title, and he is affected with notice thereof, whether he has knowledge or not and regardless of the fact that it may not be of record. If to establish a title it is not essential to prove and rely upon a deed or record, it is not a link in the chain of title, and in these circumstances one is not bound by the recitals of a deed or decree, unless he has actual knowledge thereof. See cases last cited.

If the tax sale was in fact good and valid, a purchaser thereat under no duty as a trustee, acquired title when it was certified to and sold by the state after the expiration of the period of redemption, subject only to the right of redemption given certain persons because of their disability. The tax sale here in question is not attacked, and no right of redemption is asserted. It is sought to enforce a trust, which cannot be done if Tisdale was in fact an innocent purchaser, as the undisputed testimony shows him to have been.

The case of *St. Louis & Ark. Lbr. & Mfg. Co.* v. *Godwin,* 85 Ark. 372, 108 S. W. 516, is decisive of this question. There Godwin was the original owner of lands, which were sold to Reynolds under a decree of the chancery court in an overdue tax proceeding. The deed of the commissioner in that proceeding was executed and delivered to Reynolds without the examination and approval of the court. It was said that if this omission rendered the deed ineffectual to convey the legal title, the sale and the confirmation passed the equitable title to the purchaser; and that having this equitable title, the purchaser or his grantee could assert it as a defense to a suit brought to recover the lands. It was there said: "There is evidence tending to show that Reynolds, who died before the commencement of this suit, was the agent of Godwin, and had funds in his hands with which to pay the taxes. It is, however, affirmatively shown that appellant purchased the lands and paid a valuable consideration therefor without any notice of Reynold's agency or of any other defect in the title. Appellant was charged with notice of the alleged defect in the deed which was in his chain of title, but not of matters *in pais,* which affected the validity of the sale. Appellant was therefore an innocent purchaser, and its title cannot be defeated by proof of improper conduct of his grantor toward the original holder of the title. An innocent purchaser takes title free from such equities." In other words, Reynolds' vendee was affected with notice of the fact that Reynolds had the equitable—but not the legal—title, because the proceeding showing that fact was in the chain of title. But Reynolds' vendee was not charged with knowledge of the fact that Reynolds had funds in his hands with which to pay the taxes, this being a matter *in pais.* So, here, Myers' receivership not being a link in the chain of Tisdale's title it is a matter *in pais,* with which Tisdale was not chargeable in the absence of notice.

It has been suggested in our consultation, although the point is not made in the briefs, that Mrs. Gunter's possession was itself notice to Tisdale of the trust. Many

cases hold that one who purchases land in another's possession takes with notice of whatever right, title or equity the occupant may possess; but there is no showing that there was an occupant in possession when Tisdale purchased. It is shown only that when Myers was discharged as receiver in February, 1932, he surrendered possession to Mrs. Gunter of all the lands assigned to her of which he had control, and it is affirmatively shown that Mrs. Gunter was not personally in possession, as she resided on other property. *Scott* v. *Carnes,* 183 Ark. 650, 37 S. W. (2d) 876.

We conclude, therefore, that the court was in error in holding that Tisdale was not an innocent purchaser, and that decree is reversed, and the cause will be remanded with directions to enter a decree conforming to this opinion.

HUMPHREYS and MEHAFFY, JJ., dissent.