PARKER *v.* KING.

5-1720 320 S. W. 2d 653

Opinion delivered February 9, 1959.

*Robert J. White,* for appellant.

*Richard Mobley,* for appellee.

GEORGE ROSE SMITH, J. The executrix of the will of A. C. Parrish sold the real property of the estate at a public sale. After the sale the appellants, Bill Parker and his wife, and the appellees, Leland and Kenneth King, received from the executrix conflicting deeds to the same property, and each side now claims to have been the rightful purchasers at the sale. The Kings brought this suit to cancel the executrix's deed to the Parkers and were awarded that relief by the decree now presented for review.

According to the records of the probate court, there is no uncertainty about what occurred. Parrish's will had directed that his lands be converted into cash. The executrix petitioned the court for authority to sell, among other lands, (*a*) certain mineral rights in three tracts in Johnson County, lying respectively in Sections 2, 14, and 28, and (*b*) certain Pope county land that the estate owned in fee. The court approved the petition, and the sale was held on November 26, 1954. On December 5 the executrix filed a report stating that the mineral rights in Sections 2 and 14 had been sold to the Kings for $100, that the mineral rights in Section 28 had been sold to the Parkers for $20, and that the Pope county land had been sold to the Kings for $800. Deeds to the purchasers were approved by the court. The Parkers had already paid the amount of their bid and received their deed promptly. Delivery of the Kings' deed was withheld until August, 1955, when they paid their bids.

This case involves only the mineral rights in Section 2, which were reported as having been sold to the Kings and which were described in the deed they eventually received. Before that deed was delivered, however, the Parkers discovered a mistake in their own deed, which described mineral rights in Section 22, where the estate owned nothing, instead of in Section 28. In January, 1955, the executrix, without notice to the Kings

and without any authorization by the probate court, executed a correction deed to the Parkers. This deed, which the chancellor canceled, purported to convey the mineral rights in Section 2, being the same mineral rights that the executrix had reported as having been sold to the Kings.

We think the weight of the evidence clearly supports the chancellor's decree. In insisting that the executrix's report of sale was incorrect the appellants rely largely upon the testimony of the attorney for the Parrish estate, Bob Bailey, who actually conducted the sale. It is Bailey's recollection that he first offered all the minerals the decedent had owned in Johnson county and that these minerals were sold to Parker for $20. But Bailey stated repeatedly that he was not questioning the accuracy of the executrix's report of sale, which he himself prepared. The other witnesses who were present at the sale are in disagreement as to whether the executrix's report correctly reflects what happened.

The chancellor was right in accepting the report as true. It was prepared within ten days after the sale, while the testimony that contradicts it is based only upon memory after a lapse of over three years. What is more, if all the minerals in Johnson county were first struck off to Parker, there is no explanation whatever for the Kings' admitted bid of $100. It is not denied that they made a separate bid of $800 for the Pope county land, which was a fee interest rather than a mineral interest. It is certain that the Kings bid $100 for something, and unless it was for Johnson county minerals there is no way to account for the bid.

The appellants' other arguments may be disposed of quickly. Even though they received the correction deed before the Kings obtained their deed, the Parkers were not innocent purchasers. Not only was Parker present at the sale when the Kings bought the minerals in question; the correction deed recites that the sale was conducted pursuant to the order of the probate court. This recital put the Parkers on notice of the probate proceedings, if indeed those proceedings were not

in their chain of title, and the slightest inquiry would have led to the report showing that the minerals had been sold to the appellees. See *Green* v. *Maddox,* 97 Ark. 397, 134 S. W. 931; *Scott* v. *Carnes,* 183 Ark. 650, 37 S. W. 2d 876. Nor is there merit in the contention that the Kings' bid was rendered conditional by the fact that they delayed making payment until they satisfied themselves about the title. As we pointed out in the *Green* case, *supra,* a binding contract for the purchase of the property came into existence when the court approved the sale. Even though the executrix might have resold the minerals upon the Kings' failure to complete the purchase within the time allowed by the order of sale, *Bryant* v. *Hill,* 178 Ark. 130, 10 S. W. 2d 37, she elected instead to carry out the sale by accepting the purchase money and delivering the deed.

Affirmed.