KENDALL *v.* J. I. PORTER LUMBER COMPANY.

Opinion delivered June 29, 1901.

1. DEED—GROWING TIMBER—RECORD AS CONSTRUCTIVE NOTICE.—A deed conveying growing trees, and authorizing the grantee to cut and remove them within a specified time, conveys an interest in the land, and, upon being recorded, constitutes constructive notice, under Sand. & H. Dig., § 727, providing that every deed affecting the title to any property within this state, "which is or may be required by law to be acknowledged or proved and recorded, shall be constructive notice to all persons from the time the same is filed for record in the office of the recorder of the proper county." (Page 446.)

2. DEED AS CONSTRUCTIVE NOTICE.—Where land was conveyed by the United States to M., who conveyed the growing timber thereon by that name, both deeds being on record, a subsequent grantee of the timber by deed from M., who conveyed under the name of G., will be held to have had constructive notice of the prior conveyance by his grantor if he had notice that his grantor held the land under the name of M. (Page 448.)

3. PRIOR CONVEYANCE—ACTUAL NOTICE.—Where a grantor of timber told his grantee that he had previously sold the same timber to another person, the second grantee will be held to have had actual notice of the prior conveyance, though he searched the record and failed to find the deed on record. (Page 448.)

4. RAILROAD RIGHT OF WAY—GROWING TIMBER.—Where the owner of land conveyed the growing timber thereon to one, and subsequently granted a right of way across the land to a railway company, there was no incompatibility in the two grants, and the permission of the railway company to a third person to cut the timber on the right of way would vest no title therein as against the prior grantee. (Page 448.)

5. INSTRUCTION—WHEN HARMLESS.—In conversion for cutting trees, an instruction was given that if plaintiff took timber from the lands of defendant under an agreement of exchange, by which each party was to keep an account of timber taken from the lands of the other and render to the other a statement thereof, and that the

one taking the greater quantity should pay the other for the excess, before either party would be entitled to recover from the other for such excess, it must appear that such statements were rendered and a balance struck. *Held*, harmless error, where appellant's admissions show that he was not prejudiced. (Page 448.)

Appeal from Jefferson Circuit Court.

ANTONIO B. GRACE, Judge.

*White & Altheimer,* for appellant.

To constitute a valid sale, there must be a delivery. 63 Ark. 10. A contract for sale of standing timber carries no interest in the land. 45 Mass. 583; 9 Barn. & Cress. 561; 3 Day, 484; 7 Greenleaf, 447; 1 Metc. 313; Chitty, Contr. (5 Am. Ed.), 300 302; 1 Greenleaf, Ev. § 271. Trees, when cut and carried away, become personal property. 79 Mass. 502; 4 Metc. 580; 8 Metc. 34; 81 Mass. 444; 1 Benj. Sales, § 117; Greenleaf, Ev. § 271. The record of an instrument unauthorized is not notice of contents. 1 L. R. A. 192; 79 Mass. 502. Plaintiff had no authority to sue. 14 Ark. 431; 1 Corbin, Benj. Sales, 140. Kendall was not a proper party. Sand. & H. Dig., §§ 1577-79. The testimony of Godfrey was incompetent. 57 Ark. 297; 119 U. S. 103.

*Austin & Taylor,* for appellee.

The record of the instrument was notice. Sand. & H. Dig., §§ 727, 6370; Tied. Real. Prop. § 10; 1 Kerr, Real. Prop. § 56; 35 Miss. 700; 69 Am. Dec. 744; 46 Md. 509; 44 Ark. 210; 55 Ark. 307; 65 Ark. 448.

BATTLE, J. On the 27th day of March, 1899, the J. I. Porter Lumber Company, a corporation, brought this action against Frank Kendall to recover of him the value of 175 pine trees, of the total value of $175. It alleged in its complaint that it was the owner of 125 pine trees on the north half of the northeast quarter of the northwest quarter of section 2 in township 7 south and in range 11 west, and 50 pine trees on the south half of said northeast quarter of said northwest quarter of section 2, and that the defendant wrongfully and without right or authority cut and removed from the land the pine trees so owned by it; and asked for judgment against the defendant for $350,—double the value of the trees.

The defendant answered, and denied that plaintiff was the owner of the trees growing upon the north half of the northeast quarter of the northwest quarter of section 2, and alleged that he

was the owner thereof, and, under his claim of ownership, entered upon the land and cut and carried away 159 pine trees. He denied that he entered upon and cut and removed timber from the south half of the northeast quarter of the northwest quarter of section 2. He alleged that plaintiff unlawfully cut and carried away 395 pine trees, which were his property, and of the value of $395, and converted them to his own use; and asked for judgment against the plaintiff for double their value.

Plaintiff replied, and denied all the allegations in the answer which set up a cross-demand against it.

In the trial which followed, it was shown that William Godfrey, who was sometimes called William McGehee, was the owner of the north half of the northeast quarter of the northwest quarter of section 2, and that he acquired title to the same by a patent from the United States, which conveyed the land to him by the name of William McGehee, and that W. A. Godfrey was the owner of the south half of the same tract of forty acres. On the 6th of April, 1896, William Godfrey, by the name of William McGehee, conveyed to the plaintiff all the pine trees on the land owned by him in section 2, with the right and authority to cut and remove the same at any time within 6 years; and on the 8th day of November, 1898, W. A. Godfrey conveyed to plaintiff all the pine trees on the land owned by him as before stated, with the power and authority to cut and remove the same within 2 years. Both deeds were duly acknowledged, and the former was filed for record on the 5th of May, 1896. On the 11th day of March, 1899, William Godfrey, *alias* McGehee, conveyed to the defendant "the exclusive privilege for one year to cut, haul away and remove pine trees" from the north half of the northeast quarter of the northwest quarter of section 2. The deed by which it was conveyed was acknowledged, and was filed for record on the 13th of March, 1899. At the time Godfrey executed this deed he informed the defendant that he had already conveyed the same pine trees to the plaintiff. On the 14th day of March, 1899, W. A. Godfrey conveyed to the Sand Creek & Sulphur Springs Railroad Company "a right of way 100 feet wide, the middle thereof to be the center of the track of said road, through and across" the land owned by him in section 2.

The defendant admitted in his answer that he cut and carried away 159 of the trees conveyed to the plaintiff by William Godfrey, *alias* McGehee. Evidence was adduced tending to prove

that 125 of this number were worth $125; and that he cut and converted to his own use 50 of the trees conveyed to plaintiff by W. A. Godfrey, and that the same were reasonably worth $50.

Evidence was adduced in behalf of the defendant tending to prove that William Godfrey, *alias* McGehee, at the time he told him that he had already conveyed to the plaintiff certain pine trees, also informed him that the time allowed for the cutting and removing the same had expired; that he searched the records diligently for a deed from Godfrey to the plaintiff, but found none; that a part, if not all, of the timber cut by him on the south half of the northeast quarter of the northwest quarter of section 2 was on the right of way conveyed to the Sand Creek & Sulphur Springs Railroad Company by W. A. Godfrey, and was cut by permission of the railroad company; and that the plaintiff and defendant entered into a contract by which it was agreed that plaintiff should cut the timber of the defendant on certain lands, and that the defendant should cut the timber of the plaintiff on certain other lands, and that each should keep an account of the timber cut by it or him, and render a statement of the same to the other, and that the one cutting the most timber should pay to the other the difference in the quantity cut by each at the rate of 50 cents per 1,000 feet; and that plaintiff cut of the defendant's timber, under this contract, 118,000 feet and defendant of plaintiff's 110,000, making a difference in favor of the defendant of 8,000 feet, for which the plaintiff owed him, according to their contract, $4. None of the timber exchanged under this contract was a part of the pine trees sued for by the plaintiff.

Upon this evidence the court instructed the jury that tried the issues in the case, in part, over the objections of the defendant, as follows:

"No. 1. In the first case the complaint alleges that the plaintiffs were the owners of the pine timber growing on the north half of the northeast quarter of the northwest quarter of section 2, township 7 south, range 11 west, and that the defendants entered upon the said lands and took therefrom 125 trees of the value of $125. The answer admits the taking of these trees by the defendants from this land, but justifies the same under a claim of title. As to the timber on this land, you are instructed as a matter of law that the title of the plaintiff, J. I. Porter Lumber Company, to the said trees was paramount to that of the defendants, and your verdict should be for the plaintiff."

And refused to instruct, at the request of the defendants, as, follows:

"The jury are instructed that the contract of sale of the timber then standing upon the north half of northeast quarter of northwest quarter of section 2, township 7 south, range 11 west, from William McGehee to J. I. Porter Lumber Company with the license in the J. I. Porter Lumber Company to cut and remove the same, is a contract that is not required by law to be recorded, and the recording of the same did not create constructive notice of the existence of such a contract. And if the jury find from the evidence that the J. I. Porter Lumber Company did not take possession of the said timber or exercise such open, visible, and notorious possession thereof as would put a prudent man upon inquiry as to their rights to the said timber, but left the same in the hands and possession of William McGehee, their vendor, then any person who purchased the said timber from the one in actual possession thereof, without actual notice of any outstanding right. is, in law, an innocent purchaser of the same, and his rights thereto are better than the rights of the J. I. Porter Lumber Company."

And the court instructed the jury, in part, over the objections of the defendant, as follows:

"8. And if you should find that plaintiff took timber from the lands of defendant in section 14 aforesaid, under an agreement of exchange, by which each party was to keep an account of timber taken from the lands of the other, and render to the other an account or statement thereof, and that the one receiving or taking the greater quantity should pay the other for the excess at the rate of 50 cents per thousand, board measure, then, before either party would be entitled to recover from the other for such excess, it must appear from the proof that such statements had been rendered, and a balance struck, showing the amount due from one to the other."

The jury returned a verdict in favor of the plaintiff for $175, on account of the conversion of the 175 trees sued for, and also returned a verdict in its favor as to the cross-demand of the defendant, and he appealed.

The first contention by appellant is stated by him as follows:

"It will be necessary to first determine the character of the contract between McGehee and the J. I. Porter Lumber Company under the contract of sale of the timber in this case. It was not an absolute sale, because *there was no delivery,* either actual or

symbolical; and, to constitute a valid sale, a delivery must be made. No special property in the trees growing upon the lands could have vested in the J. I. Porter Lumber Company until they had been severed from the soil; nor did the contract affect the real estate upon which the trees were growing, further than a license to enter thereon and cut and carry away the timber." Again he says: "This being a contract that does not affect the title or interest in real estate, there is nothing in our statute that requires it to be recorded, or make its record constructive notice to the world; and, this being true, Mr. Kendall was not affected with notice on account of the erroneous recording of the same by the clerk."

But this is error. Section 721 of Sandels & Hill's Digest provides: "Every deed or instrument in writing conveying or affecting real estate which shall be acknowledged or proved and certified, as prescribed by this chapter, may, together with the certificate of acknowledgment, proof, or relinquishment of dower, be recorded by the recorder of the county where such land to be conveyed or affected thereby shall be situate," etc. And section 6370 provides: "It shall be the duty of each recorder to record in the books provided for his office all deeds, mortgages, conveyances, deeds of trust, bonds, covenants, defeasances or other instruments of writing of or concerning any lands and tenements or goods and chattels, which shall be proved or acknowledged according to law, and authorized to be recorded in his office." And section 727 says: "Every deed, bond, or instrument of writing affecting the title in law or equity to any property, real or personal, within this state, which is or may be required by law to be acknowledged, or proved and recorded, shall be constructive notice to all persons from the time the same is filed for record in the office of the recorder of the proper county," etc. .

The deeds in this case conveyed growing trees, and authorized the grantee to sever them from the soil within a definite time. During this time the trees were to stand, and derive their nourishment from the ground upon which they were standing, and the deeds therefore conveyed not only the trees, but an interest in the land; and the recorder was required to record them, and when filed for record they were constructive notice of their contents to all persons. 3 Washburn, Real Property (5th Ed.), p. 368; 1 Pingree, Real Property, § 268, and 2 *id.* § 1290; 2 Jones, Real Property & Conveyancing, § 1603; 1 Kerr, Real Property, § 56; Tiedeman, Real Property, § 10; *McLeod v. Dial,* 63 Ark. 10.

Appellant also had actual notice of the contents of the deed executed by William Godfrey, *alias* McGehee, to the appellee, in another way. The land upon which the trees conveyed to appellee stood was conveyed by the United States to William McGehee. The title to the land was in the name of McGehee. When appellant purchased trees upon this land, with the privilege of removing them within a specified time, he purchased with a constructive notice of the fact that the land was conveyed to William McGehee, and that his vendor held the land in that name; and this ought to have led him to search the records for the purpose of ascertaining whether Godfrey had disposed of an interest in the land in that name, which, if he had made, would have led to the discovery of the deed executed in the name of McGehee to the appellee. This being true, the law charges him with actual notice of that fact. *Gaines* v. *Summers,* 50 Ark. 322. Appellant was also informed by his vendor that the J. I. Porter Lumber Company had purchased the timber. This did actually put him on inquiry, and he searched the records for a deed from William Godfrey to the Lumber Company. Failing to find such a deed, he purchased the timber. He did not, however, prosecute the inquiry with due diligence. There was one other source of information open to him, and that was an application to the appellee. He failed to make it, and is therefore chargeable with notice of the contents of Godfrey's deed to the Lumber Company. The undisputed facts show that he had actual notice.

The court, therefore, committed no reversible error in giving the first instruction copied in this opinion, and in refusing to give the instruction asked for by the appellant.

The permission of the Sand Creek & Sulphur Springs Railroad Company to the appellant to cut the pine trees on its right of way vested him with no right or title to the trees. The owner of the land still retained the right to all the timber on the right of way, which was not needed by the railroad company in the construction of its way, for every purpose not incompatible with the right of way. *Lyon* v. *Gormley,* 53 Pa. St. 261; *Jackson* v. *Hathaway,* 15 Johns. 447; *Taylor* v. *Armstrong,* 24 Ark. 102. The trees on the land, moreover, had been conveyed to the appellee before the right of way was acquired, and there was no incompatibility between the two grants.

The last instruction copied above should not have been given. But it was not prejudicial. On the exchange of timber referred

to in the instruction, the appellant was entitled to $4. He admitted that he cut 159 trees, which the evidence and verdict of the jury show were the property of the appellee, and the verdict of the jury shows that the appellee recovered the value of only 125 of the trees, leaving 34 for which it recovered nothing, and the evidence shows that they were worth more than $4. So appellant lost nothing by the instruction, and was not prejudiced by it.

The evidence was sufficient to sustain the verdict of the jury.

Judgment affirmed.

BUNN, C. J., absent.