HALBROOK *v.* LEWIS.

4-6802                                           163 S. W. 2d 171

Opinion delivered June 22, 1942.

580

*J. E. Brazil* and *J. W. Johnston,* for appellant.

*Opie Rogers,* for appellee.

SMITH, J.   This suit was brought by Halbrook to enjoin Lewis and Lewis' employees from cutting and removing the timber from a 40-acre tract of land in Van Buren county. The complaint was dismissed as being without equity, and from that decree is this appeal.

Prior to 1921, the land was owned by C. E. Reed, who failed to pay the 1921 general taxes due thereon, and the land was sold and forfeited to the state June 6, 1922. This sale was duly certified to the State Land Commissioner June 6, 1924, and on July 2, 1934, a decree was rendered confirming the state's title under this tax forfeiture.

Lewis sought to buy the land, and was advised by the clerk of Van Buren county that C. E. Reed was the last record owner, and that the land had forfeited to the state as being assessed to Reed. Lewis applied to the State Land Commissioner to purchase the land, but was advised by that official that the land was situated in the Federal Forest Reserve, northwest Arkansas, and might be redeemed from the state, but could not be sold by the state, whereupon Lewis obtained a quitclaim deed from Reed, and upon presentation of this deed to the land commissioner he obtained from that official a redemption deed.

Thereafter Lewis began cutting the timber on the land, and this suit was brought by Halbrook to enjoin him from doing so. The deed from Reed to Lewis was filed for record December 12, 1940.

Appellant Halbrook deraigns title as follows: A deed to him from G. E. Ring, filed for record May 22, 1941. A deed from Z. O. Ring to G. E. Ring, filed for record May 22, 1941. A deed from C. E. Reed to Z. O. Ring, filed for record May 22, 1941. The deed from Reed to Ring was dated November 3, 1923, but, as appears from the facts above stated, was not filed for record until after the deed from Reed to Lewis had been filed for record. The land was wild and unoccupied, and no one paid taxes thereon after its sale to the state in 1922 until Lewis purchased from Reed.

It appears that the state conceded the right of Reed and his grantee to redeem the land, and upon the assumption that Lewis was that person a redemption deed was executed to him by the State Land Commissioner. This deed recites the conveyance of ''all right, title and interest of the state, as authorized by §§ 10096 to 10104, C. & M. Digest.''

Appellant Halbrook contends that he—and not Lewis —had the right to obtain this deed from the state, the basis of the contention being that prior to the execution of the deed from Reed to Lewis, Reed had conveyed the land to Halbrook's predecessor in title.

It further appears, from the facts above stated, that the first deed filed for record conveying Reed's title was the deed from Reed to Lewis, although Reed had previously conveyed his title to Halbrook's predecessor in title.

Section 1847, Pope's Digest, reads, in part, as follows: ''Effect of deed—necessity of record. No deed, bond, or instrument of writing, for the conveyance of any real estate, or by which the title thereto may be affected in law or equity, hereafter made or executed, shall be good or valid against a subsequent purchaser of such real estate for a valuable consideration, without actual notice thereof: . . . unless such deed, bond, or instrument,

duly executed and acknowledged, or approved, as is or may be required by law, shall be filed for record in the office of the clerk and ex-officio recorder of the county where such real estate may be situated."

This statute is unlike the statute relating to mortgage liens (§ 9435, Pope's Digest), which reads as follows: "When lien attaches. Every mortgage, whether for real or personal property, shall be a lien on the mortgaged property from the time the same is filed in the recorder's office for record, and not before; which filing shall be notice to all persons of the existence of such mortgage."

It has been uniformly and frequently held that, under the statute last quoted, the lien of a mortgage does not attach until the mortgage has been filed for record; but a deed is effective to convey title upon its delivery to the grantee, whether recorded or not, and is good and valid against a subsequent purchaser for a valuable consideration who has actual notice thereof, although not recorded. In other words, a subsequent purchaser who places his deed of record may, and does acquire a title superior to a prior purchaser who does not file his deed for record until after the subsequent purchaser has filed his deed for record, provided the subsequent purchase was for a valuable consideration and made without actual notice of the prior conveyance. *Long* v. *Langsdale,* 56 Ark. 239, 19 S. W. 603; *Kendall* v. *J. I. Porter Lbr. Co.,* 69 Ark. 442, 64 S. W. 220; *Bogenschultz* v. *O'Toole,* 70 Ark. 253, 67 S. W. 400; *Penrose* v. *Doherty,* 70 Ark. 256, 67 S. W. 398; *Bell* v. *South Ark. Land Co.,* 129 Ark. 305, 196 S. W. 117; *Tisdale* v. *Gunter,* 194 Ark. 930, 109 S. W. 2d 1267; *Sturgis* v. *Nunn,* 203 Ark. 693, 158 S. W. 2d 673.

The parties claim from a common grantor, and the deed to Lewis was first filed for record. It is conceded that Lewis paid a valuable consideration for his deed, but it is denied that he purchased without actual notice of the earlier deed. The decision of this case depends, therefore, upon the question whether Lewis purchased without actual notice of the deed from Reed to Halbrook's predecessor in title.

To sustain the contention that Lewis was not an innocent purchaser, Reed, his grantor, was called and gave testimony as follows: "Q. Will you kindly state to the court the statement made to you by Mr. Lewis at the time he procured this deed? A. Well, he came over and told me that there was forty acres of land that went back to the state in my name and he wanted to get a quitclaim deed or fix it in a way he could redeem it. And I told him I did not remember what disposal I had made of this forty—that I had let different tracts of land go back for taxes along that time and after he gave me the check I got to studying about it and returned the check to him as I could not get into my mind what disposal I made of the land. He came back in a day or two and assured me that it was legal and right for me to give him a quitclaim deed. I told him I did not know if I had any interest because I just could not recall what I had done with that and he reassured me there would be no litigation about it. He told me the clerk recommended that was legal and he got a statement from the clerk the next day that it was legal and in my rights. The land went back to the state in my name. Q. After that you executed a quitclaim deed to him? A. Yes, sir."

In the opinion of the chancellor, this testimony was insufficient to show that Lewis had actual notice of the prior deed executed by Reed, and as that finding is not contrary to the preponderance of the evidence the decree, based on that finding, is affirmed.