AUSTIN *v.* AUSTIN.

5-2975                                                   372 S. W. 2d 231

Opinion delivered October 28, 1963.
[Rehearing denied December 2, 1963.]

*Jeptha A. Evans,* for appellant.

*Donald Poe,* for appellee.

FRANK HOLT, Associate Justice. The appellant, Oliver E. Austin, and the appellee, Hiram S. (Butler) Austin, are brothers. The appellant seeks to cancel a deed from their widowed father, M. G. (Mike) Austin, to the ap-

pellee on the contention that this deed was never delivered. The Chancellor held there was a valid delivery of this deed and quieted and confirmed title in appellee to the lands in question. On appeal the sole question presented to us for determination is whether the father, M. G. (Mike) Austin, delivered the questioned deed of August 27, 1953 to his son, Hiram S. (Butler) Austin.

On August 27, 1953, the appellant brought his father into Booneville in order that the father could make deeds to appellant and appellee, thus dividing certain lands between them. Accordingly, a scrivener prepared two deeds on this date. The Trial Court found that Oliver was present when these deeds were prepared, executed and acknowledged, and that he assisted in the preparation of both of them.

The deeds were delivered to the father as he left the scrivener's office with Oliver. Shortly thereafter, according to Oliver, his father undertook to show him and Butler the deeds, whereupon Butler took his deed and refused to return it to his father and also took possession of Oliver's deed. It is undisputed that Butler was not present when the two deeds were made. Butler testified that his first knowledge of them was acquired a few days after the date of the deeds when his father came to him in his room at his father's house and delivered the deed to him as a reward for leaving his employment in 1950 and staying with and caring for him; that his father was emotional and cried when expressing gratitude for his filial love and attentions; that his father also handed him Oliver's deed which he deposited in the house with other papers and effects of the family; that his father never requested him to return the deed nor did Oliver ever ask for his deed.

On October 29, 1953, or two months after the date of the deed in question, the father executed and had recorded another deed to Oliver which granted to him some of the lands described in the deed to Butler dated August 27, 1953. The October deed also reserved a life estate in the father as grantor. The August deeds did not.

In the October deed the father recited he had not intended to deliver the August deed to his son Butler. There was also language in the October deed that he made a mistake in the August deed in not reserving a life estate in himself as grantor and that the August deed contained land intended for Oliver. The request by the father to make this new deed was relayed by Oliver to the attorneys who drafted the deed and brought it to the father who properly acknowledged and executed it. Butler had no knowledge of the execution of the October deed until after it was executed and recorded. Butler recorded his August deed on December 28, 1953. Butler continued to live with his father and care for him until the father's death on May 28, 1954.

As stated, the issue in this case is whether the father actually delivered the August 27th deed to his son Butler. If he did, the lands therein described belong to Butler; if not, then this deed should be cancelled as a cloud on Oliver's title derived from the October deed.

It is undisputed in this case that Oliver had actual notice and knowledge of his father's deed, dated August 27, 1953, to Butler when Oliver, as a grantee, took the later deed, dated October 29, 1953. Butler was unaware of the execution of the deeds on August 27th and October 29th until after they were made. Since Oliver had notice of a prior unrecorded deed to his brother at the time the October deed to him was executed and recorded, Oliver was in the same legal position as if Butler's deed were actually recorded. *Skelly Oil Company* v. *Johnson,* 209 Ark. 1107, 194 S. W. 2d 425; *Halbrook* v. *Lewis,* 204 Ark. 579, 163 S. W. 2d 171. It follows that when Butler recorded his deed, since Oliver had notice of its existence, a presumption of delivery by the grantor, the father, arose and the burden was upon Oliver to disprove the delivery. The Trial Court held that Oliver did not offer sufficient competent proof to discharge this burden and we agree.

Butler testified positively that his father delivered his August deed to him; that neither his father nor any-

one else ever made a demand upon him for the return of his August 27th deed. Butler maintained that no one was present when his father delivered his deed to him along with Oliver's. Oliver disputed this. He testified that he was present when his father said to both of them, "I'm going to show you boys the deeds, what I have done"; that Butler took the deeds and refused to return them. The appellant offered evidence to the effect that the father, as grantor, had said that he had made a mistake in the August deeds and he did not intend to deliver the deed to Butler. These statements to these witnesses were not made in the presence of Butler, the grantee, and the Court properly excluded such as being hearsay. With reference to the veracity of these witnesses we agree with the Trial Judge when he stated:

"The witnesses who testified are of the highest credibility and there can be no question but that Mike Austin told each of them exactly what each testified Mike told him, but the fact remains that it is hearsay and not competent evidence."

The Court also held inadmissible the language in the October deed to the effect that the grantor had made a mistake and did not intend to deliver the August deed. The Trial Court properly excluded consideration of this language as being hearsay evidence and "surplusage and extraneous material, not a part of the conveyance itself and is incompetent as evidence in this case to show that there was no delivery of the deed to Butler Austin."

The declarations of a grantor, in the absence of his grantee, are inadmissible to defeat the title which he has previously conveyed to his grantee. *Reynolds* v. *Balding*, 183 Ark. 397, 36 S. W. 2d 402. We consider this case to be controlling in the case at bar. There we said:

"* * * Neither the testimony of the witnesses as to the declarations of their mother, Mary E. Mason, relative to her execution of the first deed to her daughter, Gertrude Balding, nor her subsequent recital in the deed to her daughter, Olive E. Miles, which was not made in the presence of Gertrude Balding, are admissible in

evidence to defeat the deed to her. It is well settled in this State that the acts and declarations of the grantor or of a person in possession of a tract of land are admissible to show the character and extent of his possession, but not to contradict his deed to another. It has always been held by this court that the declarations of a grantor against the title of his grantee, made in the latter's absence, are not admissible in evidence to defeat the title of the grantee.''

We also agree with the Trial Court that the statements and declarations of the grantor, subsequent to his August deeds and contemporaneous with the October deed, do not comprise any part of the *res gestae* and, therefore, are inadmissible. We consider the proffered evidence in the case at bar to be more in the form of a narrative of a past transaction and not so closely connected with the execution of the deeds as to constitute a part of the *res gestae*. *Public Utilities Corporation of Arkansas* v. *Cordell,* 184 Ark. 878, 43 S. W. 2d 746; *Toney* v. *Raines,* 224 Ark. 692, 275 S. W. 2d 771; *Williams* v. *Martin,* 226 Ark. 431, 290 S. W. 2d 442.

The Chancellor had the opportunity to observe the witnesses as to their demeanor, their visible reaction to the questions propounded to them, and the consistency or inconsistency of their testimony. From this vantage point he could evaluate their testimony. We do not disturb the findings of the Chancellor on appeal unless they are against the preponderance of the evidence. *Murphy* v. *Osborne,* 211 Ark. 319, 200 S. W. 2d 517; *Hill* v. *Barnard,* 216 Ark. 29, 224 S. W. 2d 31. We cannot say the Court's findings are against the preponderance of the competent evidence.

Affirmed.