**H.M. ADAMS, Sr., Plaintiff,**

v.

**ALLSTATE INSURANCE, Defendant.**

**No. B–C–88–127.**

United States District Court,
E.D. Arkansas, N.D.

Oct. 4, 1989.

Larry J. Hartsfield, Little Rock, Ark., for plaintiff.

Mike Huckabay, Little Rock, Ark., for defendant.

## ORDER

HENRY WOODS, District Judge.

INTRODUCTION. On October 11, 1988, plaintiff, H.M. Adams, Sr., filed the complaint at bar in Jackson County Circuit Court. His complaint, the facts of which sprang from a May 23, 1988 fire which damaged his residence and its contents, was predicated upon five counts: (1) defendant, Allstate Insurance, failed to pay his claim for damage to his residence; (2) it refused to pay his claim for damage to his personal property; (3) it refused to honor his claim for living expenses incurred following the fire; (4) it denied the foregoing claims in bad faith; and (5) its conduct was so outrageous as to cause him severe emotional distress. On November 15, 1988, defendant removed the case to federal court. On that same day, it filed an answer in which it acknowledged contesting plaintiff's claims for damage to his residence and for living expenses.[1] It alleged, however, that its refusal to honor the claims was justified because he had no insurable interest in his residence.[2]

By Letter/Order dated December 9, 1988, the Court scheduled this case for trial the week beginning October 9, 1989. The Court included the following admonition in that Letter/Order:

> Motions submitted after the deadline of the Pre–Trial Information Sheets, [September 9, 1989], may be denied solely on the basis of having been untimely filed, and all Motions/Pleadings must be filed sufficiently in advance of that date to allow a timely response.

On September 6, 1989, a mere three days before the deadline for submitting the Pre–

---

1. Defendant does not deny coverage for damage to plaintiff's personal property. It does, however, contest the amount he seeks.

2. Plaintiff's claim for living expenses is controlled by the disposition of his claim for damage to his residence. *See* Defendant's Exhibit 15 at 11.

Trial Information Sheets, defendant filed the pending motion for partial summary judgment. It was the position of defendant that the fifteen exhibits attached to the motion and supporting its Local Rule 29 statement of facts conclusively established that plaintiff had no insurable interest in his residence. Because he was alleged to have had no insurable interest in his residence, defendant was justified in contesting his claims. It therefore asked the Court to grant its motion with respect to counts one, three, four, and five. Plaintiff, after receiving a short extension, responded to defendant's motion on September 25, 1989. His response, which included a Local Rule 29 statement of facts, was supported by the affidavit of Don Daniels, Jackson County Clerk. On September 28, 1989, defendant filed a reply to that response. In the reply, it asked the Court to ignore the affidavit of Mr. Daniels because the affidavit was based upon hearsay and violated the parol evidence rule. This request was also reflected in a motion to strike filed the same day.

On September 22, 1989, plaintiff filed a motion to amend his complaint so that he might dismiss his causes of action for bad faith and emotional distress. Defendant informed the Court that it had no objection, and the motion was granted allowing him to dismiss counts four and five. *See* Order of September 28, 1989.

The Court has been informed by both parties that the only question to be resolved is whether plaintiff had an insurable interest in his residence. The relevant facts on this question are not in dispute, and the Court therefore makes the following disposition of defendant's motion for partial summary judgment.

SUMMARY JUDGMENT. "A motion for summary judgment, [or partial summary judgment], should be granted if, in viewing the evidence in the light most favorable to the non-moving party, 'there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law.'" *Nelson v. City of McGehee*, 876 F.2d 56, 57 (8th Cir.1989) (citation omitted). *See also* Fed.R.Civ.P. 56. The

non-moving party, in opposing the motion, must be given the benefit of all favorable factual inferences. *See Holloway v. Lockhart*, 813 F.2d 874, 878 (8th Cir.1987). When a motion for summary judgment is made and supported as provided for by Rule 56, the non-moving party may not " 'rest upon the mere allegations or denials of his pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial.' " *Nelson v. City of McGehee*, 876 F.2d at 57 (citation omitted). "Only disputes over facts that may affect the outcome of the lawsuit under the governing substantive law will properly preclude the entry of summary judgment." *Id.* (citation omitted).

■ FACTS. As noted, defendant has submitted a Local Rule 29 statement of facts in support of its motion for partial summary judgment. The facts outlined in that statement are taken from the fifteen exhibits supporting its motion. Plaintiff does not challenge the veracity of the documents, save one. His challenge is to Exhibit 9, the Commissioner's Report of Sale dated February 19, 1988.

> Exhibits 1 through 12 [actually 15] attached to defendant's Motion for Partial Summary Judgment filed herewith are true and correct copies of documents relating to the real property in this suit with the exception of Exhibit No. 9 being the Commissioner's Report of Sale purportedly dated February 19, 1988 signed by Don Daniels Commissioner in Chancery. That Exhibit 9 does not contain a true recitation of the facts concerning the sale which was held on February 16, 1988 by Don Daniels Commissioner in Chancery and is a false and misleading report of the events which occured on February 16, 1988. [Sic].

Plaintiff's Statement of Facts at 1. The foregoing assertion is buttressed by the affidavit executed by Mr. Daniels. In this affidavit, he testifies to certain facts surrounding the sale of plaintiff's residence that are not reflected in the documents on file with the Jackson County Clerk. It is this affidavit that defendant has asked the Court to strike. Plaintiff has now respond-

ed to that motion, but his response is not persuasive. For the reasons that follow, the motion to strike is granted.

▆ Fed.R.Civ.P. 56(e) provides, in part:

Supporting and opposing affidavits shall be made on personal knowledge, *shall set forth such facts as would be admissible in evidence,* and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

[Emphasis added]. The affidavit runs afoul of this rule for two reasons. First, it is replete with hearsay testimony. The following excerpt is instructive.

On the morning of February 24, 1988 Harry Mack Adams, Sr. produced in my, [Don Daniels], office a bond executed by himself and A.L. Adams as surety. I immediately telephoned Lisa Thompson who advised that she had been in contact with the attorney for Harry Mack Adams, Sr., that the First National Bank of Sikeston would waive the requirement for a commerical bond and would "give Mr. Adams a chance" to buy the property.

Affidavit of Don Daniels at 2. Admittedly, the rule against hearsay testimony, with its many exceptions, is oftentimes a difficult concept, but the Court can say with some confidence that the foregoing excerpt is inadmissible hearsay testimony. And second, the affidavit offers parol evidence which tends to impeach a judicial document. It is axiomatic that parol evidence which tends to impeach or contradict a judicial document is not admissible, *see* 32A C.J.S. *Evidence* §§ 931, 1008 (1964), and the assertion that Exhibit 9 is "false and misleading" is clearly such an attempt.

The Court therefore finds that the affidavit executed by Mr. Daniels will not be considered. Because this affidavit will not be considered, plaintiff's statement of facts is not supported by any evidence. Thus, he has in effect submitted no statement conforming to Local Rule 29. Because the statement filed by defendant is, however, supported by several exhibits, and because the facts outlined therein are in effect unrebutted, the Court will adopt those facts

which are supported by the various pleadings and exhibits. The Court finds the following facts:

1. On September 13, 1984, A/A Agricultural Services, Inc. ("A/A") acquired the title to real property located at 803 Walnut Street, Newport, Arkansas by Warranty Deed from A.L. and Bertha Adams. *See* Defendant's Exhibit 3.

2. On that same day, A/A, by its president, H.M. Adams, Jr., gave a Deed of Trust on the property to the First National Bank of Sikeston, Missouri ("Bank"). *See* Defendant's Exhibit 4. In the Deed, A/A waived its right of redemption.

3. On December 11, 1986, the Bank filed a complaint against A/A, H.M. Adams, Jr., Fred M. Pickens, Jr., and American National Bank in Jackson County Chancery Court seeking to foreclose on the property. *See* Defendant's Exhibit 5.

4. On January 30, 1987, A/A, by its president, executed a Quitclaim Deed conveying its title to the real property at 803 Walnut Street to plaintiff. *See* Defendant's Exhibit 6. The Deed, however, was never recorded. This transaction occurred despite the fact that the corporate franchise of A/A had been revoked during 1985 for non-payment of franchise taxes. *See* Exhibit to Defendant's Reply.

5. Plaintiff thereafter moved into the residence at that address.

6. On September 29, 1987, plaintiff obtained a policy of insurance from defendant covering his residence and its contents. *See* Answer at 1. It is undisputed that the policy provided for living expenses in the event of a loss. The term of the policy was to run for one year. *See* Complaint at 1.

7. On January 13, 1988, a Decree of Foreclosure was entered in Jackson County Chancery Court. *See* Defendant's Exhibit 8. The Decree: (1) recited that the court had jurisdiction of the parties and cause of action; (2) entered judgment for the Bank against the real property at 803 Walnut Street in an amount exceeding $50,000; (3) directed that if the judgment was not discharged within ten days from the date of the Decree, the Clerk of the Court, as

Commissioner, was to sell the property at public auction; (4) provided that the property would be sold on a credit of three months with the purchaser required to execute a bond with a commercial surety; and (5) provided that such sale would constitute a permanent bar to all rights of redemption, dower, curtesy, homestead, and appraisement which any person might claim. *See* Defendant's Exhibit 8.

8. On February 16, 1988, the Commissioner's Sale was held. *See* Defendant's Exhibit 9. The property was purchased by the Bank. *See* Defendant's Exhibit 9.

9. On February 19, 1988, the Commissioner's Report of Sale was filed. *See* Defendant's Exhibit 9. The document stated the following:

First National Bank of Sikeston bid and offered the sum of $62,739.33 for all of the property described in said Decree. A third party offered a bid of $68,433.16, however, the third party had no cash or bond with which to make payment. Therefore, First National Bank of Sikeston's bid of $62,739.33 being the highest bid made at such offering, said property was struck off and sold to said bidder, *subject to the approval of this Court,* at the price offered.

[Emphasis added].

10. On February 24, 1988, a bond was filed by plaintiff, as principal, and A.L. Adams, as surety, binding themselves to pay $68,433.16 to the Commissioner, that amount "being the purchase price this day bid upon the sale." *See* Defendant's Exhibit 10. The bond also recited that the amount was due and payable within ninety days of February 16, 1988, the day it was executed. *See* Defendant's Exhibit 10.

11. On May 23, 1988, a fire damaged plaintiff's residence and its contents. *See* Answer at 1.

12. Following the fire, plaintiff made a demand on defendant for damage to his residence, its contents, and his living expenses. *See* Answer at 2–3. Defendant denied coverage for the residence and for his living expenses because he allegedly had no insurable interest in his residence at the time of the fire. Defendant did, however, acknowledge coverage for his personal property but contested the amount he sought.

13. On June 16, 1988, a second Commissioner's Report of Sale was filed. *See* Defendant's Exhibit 11. This document reflected that the sale had occurred on February 16, 1988; that the Bank had bid the sum of $62,739.33; and that the property was sold to the Bank at that price. *See* Defendant's Exhibit 11.

14. On June 21, 1988, the state court approved the sale and directed the Commissioner to execute a deed to the property to the Bank. *See* Defendant's Exhibit 12.

15. That same day, the Commissioner executed the document, and the Bank filed the Deed. *See* Defendant's Exhibit 13.

16. When defendant refused to honor the claims made by plaintiff, he filed the complaint at bar in Jackson County Circuit Court on October 11, 1988.

LAW TO BE APPLIED. As noted, the only question before the Court is whether plaintiff had an insurable interest in his residence at the time of the fire. The answer to this question is governed by *Ark.Code Ann.* § 23–79–104, which provides:

(a) No contract of insurance of property or of any interest in property or arising from property shall be enforceable as to the insurance except for the benefit of persons having an insurable interest in the things insured at the time of the effectuation of the insurance and at the time of the loss.

(b) "Insurable interest" as used in this section means any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment.

This interest has been interpreted by the Arkansas Court of Appeals to mean any interest in property whereby plaintiff would profit from or gain some advantage by the property's continued existence and suffer some loss or disadvantage by its destruction. *See Hartford Fire Insurance Co. v. Stanley,* 7 Ark.App. 94, 644 S.W.2d

628, 629 (1983) [quoting 3 *Couch on Insurance* § 24:13 (2nd ed. 1960)]. " 'If he would sustain such loss, it is immaterial whether he has, or has not, any title in, or lien upon, or possession of, the property itself.' " *Id.*

■ ANALYSIS. The Court begins with the undisputed fact that on September 13, 1984, A/A owned the real property in question outright. That same day, however, it gave a Deed of Trust on the property to the Bank. In so doing, A/A conveyed the legal interest in the property but kept an equitable interest. Any right to redeem this equitable interest was, however, waived pursuant to the terms of the Deed.

■ A/A retained an equitable interest in the property until January 30, 1987 when it conveyed the property to plaintiff by Quitclaim Deed. Thus, plaintiff assumed the rights and liabilities previously possessed by A/A. For purposes of this Order, it is not significant that the Deed was never recorded because an unrecorded deed is good as between the parties involved in the transaction. *See Halbrook v. Lewis*, 204 Ark. 579, 163 S.W.2d 171, 172 (1942) (deed is effective to convey title upon its delivery to the grantee, regardless of whether it is recorded). It is also of no significance, for purposes of this Order, that the corporate franchise of A/A had been revoked prior to this conveyance. First, the Court must confess some difficulty with defendant's standing to make such an assertion. And second, A/A's corporate status would not affect the interest of plaintiff who apparently took his equitable interest in good faith.

■ The state of plaintiff's interest in the residence at 803 Walnut Street remained the same through September 29, 1987, the day he obtained a policy of insurance with defendant;[3] through January 13, 1988, the day the Decree of Foreclosure was entered; and up to February 16, 1988, the day the Commissioner's sale was held.

On February 16, 1988, the Bank purchased the property. Did this judicial sale affect plaintiff's interest in the property? The Court thinks not. The Commissioner's Report of Sale filed on February 19, 1988 clearly states that the sale to the Bank was "subject to the approval of the [Chancery] Court." *See* Defendant's Exhibit 9. Thus, the sale was not final. This conclusion is in accord with a long line of Arkansas cases which hold that a judicial sale is not complete until it is confirmed by the court. *See Fleming v. Southland Life Insurance Co.*, 263 Ark. 272, 564 S.W.2d 216, 218 (1978); *De Yampert v. Manley*, 127 Ark. 153, 191 S.W. 905, 907–08 (1917). It is of no significance that plaintiff had no right of redemption, given the waiver executed by A/A, because he had not lost his interest in the property on the day of the fire. It was not until June 21, 1988 that he lost his interest, for it was on that day the Commissioner's sale was approved by the state court. It is the finding of this Court that he had an interest, an insurable interest, in his residence at 803 Walnut Street on the day of the fire.

CONCLUSION. With regard to defendant's motion to strike, the Court finds it to have merit. It is therefore granted. With regard to defendant's motion for partial summary judgment, the Court finds that while the material facts are not in dispute, it is not entitled to relief it seeks. The Court finds, as a matter of law, that plaintiff had an insurable interest in his residence on the day of the fire. The motion for partial summary judgment is therefore denied.

IT IS SO ORDERED.

---

**3.** Defendant does not dispute that plaintiff had an insurable interest in his residence on the day

the policy was acquired.